NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5848-12T1

IN RE APPEAL OF THE DENIAL OF
THE APPLICATION OF Z.L. FOR
A FIREARMS PURCHASER IDENTIFICATION
CARD AND THREE HANDGUN PERMITS.[1]

APPROVED FOR PUBLICATION

April 22, 2015

APPELLATE DIVISION

Submitted January 7, 2015 — Decided April 22, 2015

Before Judges Fuentes, Kennedy and O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Municipal Appeal No. 2013-024.

Evan F. Nappen, attorney for appellant Z.L. (Louis P. Nappen, on the brief).

Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney for respondent State of New Jersey (Mary R. Juliano, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; Ashley L. Behre, Legal Assistant, on the brief).

The opinion of the Court was delivered by

KENNEDY, J.A.D.

Appellant, Z.L., appeals an order of the Law Division upholding the denial of his application for a firearms purchaser

_____

[1] We have corrected the caption to eliminate the appearance of a criminal appeal.

identification card and three permits to purchase a handgun ("the permits"). Appellant argues that the Law Division improperly considered his history of domestic disputes as evidence that granting his application for the permits creates a present danger to "public health, safety and welfare" under N.J.S.A. 2C:58-3(c)(5). Appellant further argues that the Law Division denied his right to "procedural due process"; erred by requiring him to testify before the State presented its case; and erred by basing its ruling upon "speculation and hearsay." We have considered these arguments in light of the record and the law, and we affirm the order of the Law Division.

In January 2013, appellant applied to the Aberdeen Police Department for the permits. A detective undertook an investigation into appellant's background, and learned that, while he had never been convicted of a crime or any disorderly persons or domestic violence offenses, he had been arrested in 1998 for domestic violence and police responded to his home on five occasions from 2003 to 2011 to resolve disputes between him and his wife.

In 1998, appellant's wife called police and charged him with simple assault. Although a domestic violence complaint was filed, appellant's wife did not seek a temporary restraining order, and the charge was not thereafter sustained. Also,

police responded to appellant's home on five occasions, between 2003 and 2011, based on various domestic dispute complaints reported by his wife. The Aberdeen Police Chief denied appellant's application for the permits, explaining that the investigation "revealed a past history of domestic violence. This in itself may indicate a public safety concern." He then appealed to the Law Division.

The Law Division judge conducted a hearing, at which both appellant and the investigating detective testified. Appellant, represented by counsel, elected to testify and essentially confirmed the accuracy of his application, stating, among other things, that he had never been convicted of a "domestic violence" offense and had never been the subject of a temporary or a final restraining order. Defense counsel objected as beyond the scope of direct examination to the State's questioning of appellant regarding the domestic disputes upon which the police chief had denied his application for the permits. The judge overruled the objection.

The State then cross-examined appellant about the 1998 domestic violence complaint and the five other domestic disputes in which police responded to his home, and appellant essentially confirmed the core facts. Appellant conceded he had struck his wife in 1998, but stated it was "accidental." He said he had

3                                                          A-5848-12T1

inadvertently struck his wife in the mouth with his hand when she walked up behind him, after a disagreement about their child's dishwashing techniques. He said he had never intentionally struck her, and added he was "acquitted" after a brief trial. He also explained the other police responses to the home arose from ordinary disputes between spouses, and none involved violence or threats. Further, he described his relationship with his wife as "better than at that time" and ascribed her decision to sleep separately to her "sleep disorder."

After both sides rested and made their closing arguments, the judge found, in pertinent part, as follows:

> In this case, there had been a number of visits by the police over an eight-year period. And when they were -- if you were to today to look at each one of these incidents, if that were judge one incident, that would be, certainly perhaps a different case before us. But we don't have just one incident. We have a series of instances starting back in August 24, 1998, and the final incident that was testified to, and as part of this record, was made [September 4,] 2011.
>
> That series of incidents, one compounded upon the other, I think that gives us a picture and certainly something that this Court feels is compelling and convincing.
>
> The record does not show why [appellant's wife] feels compelled to call the police every time her and [appellant] have a dispute. But the fact is that the police

have still been to this house a number of different times. The inclusion of firearms or handgun into this unpredictable situation only stands to strain the relationship further.

It is evident from the 1998 domestic violence arrest and multiple subsequent police interactions that the [appellant] and [appellant's wife] are unable to amicably resolve minor disputes. Accordingly, the volatile situation between [appellant] and [appellant's wife] is not place, in this Court's opinion, to add firearms.

Accordingly, it's going to be the ruling of this Court that [] the appeal is going to be denied.

This appeal followed.

We address appellant's argument that the Law Division gave improper weight to his history of domestic disputes first. We then turn to appellant's argument that the Law Division erred by requiring him to testify first, and by relying upon speculation and hearsay in issuing the order under appeal. We find appellant's remaining arguments to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

On this appeal, our review of the trial court's decision is limited. The Supreme Court has stated:

Ordinarily, an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence. Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility. Thus, an

appellate court should not disturb a trial court's fact-findings unless those findings would work an injustice. Consequently, "an appellate court should exercise its original fact finding jurisdiction sparingly and in none but a clear case where there is no doubt about the matter." If, however, an appellate court is reviewing a trial court's legal conclusions, the same level of deference is not required.

[In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997) (citations omitted).]

The Gun Control Law recognizes that the right to possess firearms is presumed, except for certain good cause:

No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth.

[N.J.S.A. 2C:58-3(c)].

In relevant part, the statute provides that handgun permits shall not be issued "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare[.]" N.J.S.A. 2C:58-3(c)(5). Section (c)(5) "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" In re

Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003), certif. denied, 179 N.J. 310 (2004).

The statute also lists eight categories of disqualifications. An arrest that did not result in conviction is not one of the listed disqualifications. However, as we explained earlier, N.J.S.A. 2C:58-3(c)(5) is intended to address issues of individual unfitness, not otherwise categorized in the statute. In Osworth, supra, we considered the quoted subsection (5) disqualification and held that "[t]he dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm." Id. at 78; see also In re Return of Weapons to J.W.D., supra, 149 N.J. at 110 (a court may determine, even after dismissal of a domestic violence complaint, that firearms may be forfeited by a defendant pursuant to N.J.S.A. 2C:58-3(c) and 2C:25-21(d)(3) because "the defendant poses a threat to public health, safety, or welfare"); State v. One Marlin Rifle, 319 N.J. Super. 359, 371 (App. Div. 1999); State v. Cunningham, 186 N.J. Super. 502, 504-08 (App. Div. 1982) (State could refuse to return lawfully-purchased gun to defendant despite grand jury's no billing of charge that he shot his wife). Even in the absence of evidence that appellant was convicted of any offenses, the New Jersey statute permits denial of his

application if the underlying facts of any arrests or reported domestic disputes support one of the eight listed categories of disqualification or the public safety disqualification.

Indeed, our courts have repeatedly upheld disqualification under subsection (c)(5), separately, or in conjunction with, other statutory disabilities. In State v. Freysinger, 311 N.J. Super. 509, 516 (App. Div. 1998), for example, we determined that the defendant was both a habitual drunkard, under N.J.S.A. 2C:58-3(c)(2), and posed a threat to the public health, safety or welfare under (c)(5). In State v. Cardoma, 372 N.J. Super. 524, 536 (App. Div. 2004), in deciding the defendant was disqualified under subsection (c)(5), we considered the defendant's mental condition, even though it did not rise to the level of the disabling conditions set forth in N.J.S.A. 2C:58-3(c)(2) and (3). Further, as we explained earlier, in Osworth, supra, 365 N.J. Super. at 80-81, even though the defendant's prior conduct did not result in a disqualifying conviction under N.J.S.A. 2C:58-3(c)(1), we nonetheless determined that, under all the circumstances, denial of a handgun purchase permit was warranted by application of subsection (c)(5).

In Osworth, supra, we also explained the proper procedure in the Law Division under N.J.S.A. 2C:58-3(d) for review of the police chief's decision. Osworth, supra, 365 N.J. Super. at 77-

78. We stated that the hearing in the Law Division is "de novo" and that the judge must independently determine whether the applicant is entitled to a handgun permit. Id. at 77. Citing Weston v. State, 60 N.J. 36, 46 (1972), we explained that the applicant must present his evidence and then the police chief, or the police chief's designee who conducted the investigation, must explain why the application was denied. Osworth, supra, 365 N.J. Super. at 78. Significantly, we held that the police chief has the burden of proving an applicant is not qualified to receive a handgun permit. Id. at 77 (citing Weston, supra, 60 N.J. at 46).

Appellant argues that the Law Division reversed the burden of proof and placed it upon him by requiring that he prove the dispositions and the facts pertinent to the domestic violence arrest and domestic disputes. We disagree. The trial judge properly allocated the burden of proof. Appellant nonetheless argues otherwise, asserting that the trial judge "required" him to testify first. This contention is belied by the record. Moreover, the fact that the judge overruled a "beyond the scope" objection adds nothing to the argument and, in any event, is the type of evidential ruling committed to the discretion of a trial judge. See N.J.R.E. 611(b); State v. Rose, 112 N.J. 454, 459 (1988); Ostroski v. Mount Pleasant ShopRite, Inc., 94 N.J.

Super. 372 (App. Div.), certif. denied, 99 N.J. 369 (1967). We discern no error in that ruling.

On an appeal from the denial of firearms permits, the trial court hears the matter de novo, and the police chief has the burden of proof by a preponderance of the evidence. Id. at 77. Hearsay is admissible, but there must be sufficient legally competent evidence to support the court's findings. Weston v. State, 60 N.J. 36, 50-51 (1972). Even if an applicant was previously charged with an offense but not convicted, in a later permit hearing the chief may still present to the court the evidence underlying the charges. "The dismissal of criminal charges does not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm or recover one previously taken by the police." Osworth, supra, 365 N.J. Super. at 78 (citing In re Return of Weapons to J.W.D., supra, 149 N.J. at 110). Accordingly, the admission of such evidence here was not improper in any respect, and any "hearsay" in the police reports was essentially corroborated by appellant's testimony in court. We find no error in the trial judge's reliance upon that testimony.

Finally, the facts of this case compel the conclusion that the order upholding denial of the permits was proper. The 1998 incident was not isolated and aberrational, as appellant claims.

A-5848-12T1

Five times, between 2003 and 2011, police officers responded to appellant's home on complaints by his wife of domestic disputes. Each such complaint, despite appellant's characterizations, wherein appellant's spouse felt compelled to require police assistance, is imbued with the potential for violent reaction. The presence of a firearm in such a household enhances the potential for such reactions to become lethal.

The judge rejected appellant's attempts to downplay the significance of the serial number of domestic disputes after 1998, and determined that there was nothing to suggest that this history of discord between the couple would likely abate. In addition, the trial judge manifestly found appellant's characterization of his "great" relationship with his wife and his ascribing of aspects of her conduct to sleep difficulties, unconvincing. After reading the transcript, we are inclined to agree. Moreover, the judge had the opportunity, which we did not, to observe appellant's demeanor and hear him testify. We are aware that live testimony can convey nuances that a cold record cannot. See State v. Locurto, 157 N.J. 463, 474 (1999). We decline to second-guess the trial judge's conclusion that, at the time of the hearing, granting appellant's application, in effect, would not be in the interest of the public health, safety or welfare. N.J.S.A. 2C:58-3(c)(5).

11

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5848-12T1