**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3426-16T4

IN THE MATTER OF THE
APPLICATION OF THE STATE
OF NEW JERSEY FOR
DISPOSITION OF WEAPONS
BELONGING TO D.S.

_____

Submitted January 29, 2019 – Decided  February 11, 2019

Before Judges Hoffman and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. DVWP 16-31.

Law Offices of Jef D. Henninger, attorneys for appellant D.S. (Brent DiMarco and Jef D. Henninger, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent State of New Jersey (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant D.S.[1] appeals from a Family Part order forfeiting his handgun, shotgun, ammunition, and firearms purchaser identification card (FPIC) following domestic violence proceedings between appellant and his then-wife, R.S., pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.

Following the seizure of D.S.'s firearms, FPIC, and ammunition, the Passaic County Prosecutor's Office moved for forfeiture pursuant to N.J.S.A. 2C:25-21(d)(3). The Family Part judge conducted a two-day hearing; only appellant and North Haledon Police Chief Robert Bracco testified.

The testimony revealed a problematic marital relationship between D.S and R.S., which included an escalating series of domestic violence incidents that did not result in convictions. The incidents were described in five police reports prepared by North Haledon police officers. At the request of the Passaic County Prosecutor's Office, Chief Bracco investigated whether D.S. had any disabilities under N.J.S.A. 2C:58-3(c). His investigation included searching the police department's computer system for any reported incidents involving D.S. He also checked the domestic violence registry for any current, prior, or dismissed restraining orders involving D.S. Chief Bracco testified on the first day of the

---

[1] We refer to appellant and his ex-wife by initials to protect their privacy.

hearing regarding the domestic violence incidents based on the contents of the police reports he found during his investigation. We briefly summarize the pertinent aspects of his testimony.

On February 21, 2014, Officer Michael Zimmer responded to the report of an altercation between D.S. and R.S. in a car owned by D.S. Officer Zimmer was unable to locate anyone involved. On December 23, 2014, Detective Sergeant David Parenta responded to a call from R.S.'s employer that R.S. was the victim of domestic violence. Upon arrival, R.S. stated she has intense arguments with her husband and that she is afraid of living with him. On January 19, 2015, Officer Yusef Fattah came upon D.S. and R.S. having an argument that initiated in their home, regarding R.S.'s consumption of alcohol. On October 6, 2015, Detective Shawn Phillips responded to D.S. and R.S.'s residence for a welfare check as a result of a call received from R.S.'s friend who reported R.S. told her she was having a bad day and is being beaten by her husband. R.S. told Detective Phillips "everything was fine." No arrests were made as a result of any of these fours incidents.

Finally, on June 13, 2016, Officer Michael Cedar responded to a possible domestic violence call at D.S. and R.S.'s residence. Officer Cedar observed

"fresh marks" on R.S.'s face. She told Officer Cedar that D.S. had struck her face after an argument. Officer Cedar arrested D.S.

Chief Bracco testified that after reviewing the police reports, he "didn't think it would be wise to return the weapons to the house at this time" given "the escalation of seriousness of the domestic violence incidents from verbal arguments to now a physical assault, and also the fact that alcohol appears to be an issue in this ongoing problem." Chief Bracco stated on cross-examination that none of the police reports indicated D.S. was intoxicated. The Chief's main concern was not so much who was intoxicated but rather, that alcohol-related problems were causing domestic violence in the home. He also testified he could change his mind if a final divorce decree was entered or there was a signed separation agreement.

D.S. represented himself at the hearing. He subpoenaed two police officers involved in drafting the proffered police reports. He also subpoenaed his wife's daughter. None of the subpoenaed witnesses appeared for the second day of the hearing. The court advised D.S. of his rights regarding the subpoenas and his options. Defendant expressed understanding the court's explanation and elected to proceed with the hearing anyway.

A-3426-16T4

D.S. provided his own version of the five incidents, attempting to show he was not at fault on any of those occasions. He maintained his wife abuses alcohol and initiates violence. He argued that during the February 21, 2014 incident, he was assaulted by his intoxicated wife, and a bystander called the police. D.S. claimed police did not arrive while he was there and was unaware a report was generated. Regarding the December 23, 2014 incident, D.S. claimed his wife was intoxicated and her intoxicated co-workers misunderstood his wife's statement about fighting with him at home, leading to the co-workers calling the police. D.S. detailed another incident in which his wife was drunk and assaulted him in a car. D.S. claimed the welfare check was a result of a false tip from his wife's ex-boyfriend.

Regarding the June 13, 2016 incident, D.S. claimed his wife threw herself on the back of his reclining chair, causing the chair to tip and make D.S. throw his hands up, accidently striking his wife in the face. D.S. also claimed the "fresh marks" Officer Cedar observed on R.S.'s face was actually a month-old black eye R.S. gave herself after passing out drunk.

D.S. admitted on cross-examination he had previously been admitted into the Pre-Trial Intervention (PTI) Program for possession of a sawed-off shotgun.

D.S. testified that case began with a false allegation of a threat to his wife. He testified his ex-wife admitted under oath she had lied about the allegation.

D.S. explained he and his wife are not residing together and he had filed for divorce. A divorce decree had not been entered by the second hearing day. D.S. insisted he did not pressure his wife to sign a consent to return weapons form that was admitted into evidence.

The State moved to admit the five police reports into evidence. Initially, D.S. objected, claiming the reports were not complete. He stated the reports omitted information for reasons that made no sense to him. The judge took the admission of the police reports under advisement.

Following the conclusion of the testimony, the judge revisited admission of the reports. After the judge explained the ramifications of admitting the reports into evidence, D.S. consented to putting the reports in evidence, "because [he] explained them." As a result, the reports were admitted into evidence.

Before issuing her ruling, the judge stated she "did not consider the police reports despite the fact they were entered into evidence. This way my decision will not be, in any way, based upon those police reports," because D.S. "doesn't

A-3426-16T4

wish for an adjournment so that the officers can be called." Instead, the judge stated she would "rely solely on the testimony."

The judge heard Chief Bracco and D.S. testify, enabling her to assess their demeanor, credibility, and other aspects of their testimony. The judge found Chief Bracco extremely credible, finding him unbiased and his answers reasonable.

In contrast, the judge found certain aspects of D.S.'s version of the incidents did not make logical sense. She found some of his testimony was not reasonable, inherently believable, or internally consistent. Thus, his testimony was not, "in totality," credible. The judge further noted his "testimony, even if believed, indicates he has a history of getting himself involved with women where there is domestic violence. He readily admitted . . . his first wife indicated that he tried to kill her and that is why he was charged with the sawed-off shotgun . . . ." The judge further noted D.S. then became involved with a woman who is a chronic alcoholic with "some history which causes him to constantly get in trouble with her."

In her oral decision, the judge "weigh[ed] the potential of adding firearms into an already volatile situation." She found there is "nothing to indicate that these parties are not going to come into contact through divorce proceedings,

7

which are heated, [or] through any sort of other circumstances where they may become involved."  The judge determined the State met its burden of proof, concluding that "adding a weapon to this type of volatile situation is not in the best interest of community safekeeping."  The judge ordered the forfeiture of defendant's firearms, FPIC, and ammunition.  This appeal followed.

Appellant argues the trial court erred because:  (1) the police reports admitted into evidence were double hearsay, and therefore the state's case was unable to support a finding of forfeiture; (2) he was not provided proper notice or discovery in his case and was thereby denied a fair hearing; and (3) the State failed to meet its burden of proof in demonstrating defendant is disqualified from owning a firearm.

Appellate review of a forfeiture of firearms and FPIC in an action under the PDVA is deferential.  In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505-06 (2016).  "[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis."  Id. at 505 (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)).  Therefore, "an appellate court should accept a trial court's findings of fact that are supported by

substantial credible evidence." Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)).

Family Part judges are vested with great discretion because they are specially trained in family matters. Id. at 506. "Therefore, 'we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). However, legal determinations by the Family Part are not entitled to any special deference and are reviewed de novo. Ibid. (citing Gere v. Louis, 209 N.J. 486, 499 (2012)).

Individuals seeking to purchase a firearm in New Jersey are required to apply for a FPIC and permit. N.J.S.A. 2C:58-3(a) to (b); N.J.A.C. 13:54-2.2. Under the statute, any "person of good character and good repute in the community" may obtain a firearm, subject to the disabilities set forth in N.J.S.A. 2C:58-3(c). These disabilities include, in pertinent part, "any person where the issuance would not be in the interest of the public health, safety or welfare," and "any person whose firearm is seized pursuant to the [PDVA] . . . and whose firearm has not been returned." N.J.S.A. 2C:58-3(c)(5) and (8). The statute is

designed "to prevent firearms from coming into the hands of persons likely to pose a danger to the public." F.M., 225 N.J. at 507 (quoting State v. Cunningham, 186 N.J. Super. 502, 511 (App. Div. 1982)).

An FPIC may be revoked after notice and hearing "upon a finding that the holder thereof no longer qualifies for the issuance of such permit." N.J.S.A. 2C:58-3(f). The proceedings are conducted in a summary fashion, with the burden of proof "upon the State to show, by a preponderance of the evidence, that forfeiture is legally warranted." Cordoma, 372 N.J. Super. at 533.

"Because the presence of weapons can heighten the risk of harm in an incident of domestic violence, the [PDVA] contains detailed provisions with respect to weapons." State v. Harris, 211 N.J. 566, 579 (2012). A police officer is empowered to seize any weapon, FPIC, and gun permit on the premises when probable cause exists to believe an act of domestic violence has been committed and the officer "reasonably believes the weapon would expose the victim to a risk of serious bodily harm." N.J.S.A. 2C:25-21(d)(1)(b). The seized weapons are inventoried, turned over to the county prosecutor, and must be returned to the owner, unless the prosecutor timely applies to the Family Part for forfeiture. N.J.S.A. 2C:25-21(d)(2) to (3); F.M., 225 N.J. at 510. Following a summary hearing on notice to the owner, the Family Part:

shall order the return of the firearms, weapons and any authorization papers . . . if the court determines the owner is not subject to any of the disabilities set forth in N.J.S.A. 2C:58-3(c) and finds that the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; . . . or if the court determines that the domestic violence situation no longer exists.

[N.J.S.A. 2C:25-21(d)(3).]

"Therefore, even if a domestic violence complaint is dismissed and the conditions abate, forfeiture may be ordered if . . . the defendant's possession of weapons 'would not be in the interests of the public health safety or welfare.'" F.M., 225 N.J. at 510-11 (quoting N.J.S.A. 2C:58-3(c)(5)); see In re Z.L., 440 N.J. Super. 351, 358-59 (App. Div. 2015) (holding forfeiture proper where police officers responded to five separate complaints of domestic violence between defendant and wife, even though no temporary or final restraining order was ever issued).

Although hearsay is generally not admissible evidence, the summary nature of the proceeding allows for slightly relaxed rules of evidence, much like the "common practice for administrative agencies to receive hearsay evidence at their hearings." Weston v. State, 60 N.J. 36, 50-51 (1972). However, factual findings and legal conclusions "cannot be based upon hearsay alone." Id. at 51.

11

Although the police reports constitute hearsay and were presented by a person other than their author, the contents were not offered for the truth of the matter asserted, nor were the contents relied upon by the court. Rather, Chief Bracco testified he relied on the existence of the reports to deny the return of defendant's weapons and permit. Chief Bracco personally searched department records and discovered the police reports. He was permitted to testify regarding the results of that inquiry.

Even if the reports were offered for the truth of the matter asserted in contravention of the prohibition on hearsay, hearsay is admissible in these proceedings so long as there is "sufficient legally competent evidence to support the court's findings." Z.L., 440 N.J. Super. at 358 (citing Weston, 60 N.J. at 50-51). Moreover, the contents of the police reports were largely corroborated by D.S.'s testimony. See ibid. (stating "any 'hearsay' in the police reports was essentially corroborated by appellant's testimony in court"). We thus find no error in the trial judge's reliance upon Chief Bracco's testimony.

We further note that defendant withdrew his objection and consented to the admission of the police reports. He did not object to Chief Bracco's testimony. Therefore, we review the admission of the police report and related testimony for plain error. R. 2:10-2. "Under that standard '[a]ny error or

omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result.'" Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018) (alteration in original) (quoting R. 2:10-2). Applying that standard, we find no plain error.

D.S. complains he was denied due process by not receiving notice of the hearing or discovery relevant to the case. We are unpersuaded by this argument. D.S. received the State's forfeiture motion as evidenced by his attendance at the hearing. He was able to review the police reports before the hearing began. He was personally familiar with each of the incidents which led to the reports. D.S. concedes there is no statutory right to discovery in this summary proceeding.

When D.S. alerted the trial court he felt surprised by the proceedings, the judge ordered a second hearing day with the first day limited to the State putting its case on the record. D.S. thus had sufficient time to subpoena witnesses for the second hearing date, which was almost three months later. When the subpoenaed witnesses did not appear to testify, the trial court did not proceed with the hearing until it was satisfied defendant wished to proceed that day rather than adjourning the hearing to enforce the subpoenas against the nonresponsive witnesses. D.S. has not shown any surprise or unfair prejudice.

D.S. also claims the State did not meet its burden of proof. We disagree. The absence of lasting charges or final restraining orders is not dispositive. In Z.L., a case with very similar facts, a series of domestic violence incidents did not lead to lasting charges or restraining orders. 440 N.J. Super. at 353. The defendant in Z.L., like the defendant in this case, claimed to have accidentally struck the victim. Id. at 354. We noted the pattern of incidents and found the cumulative impact of them controlling. We agreed that a firearm did not belong in an environment of escalating incidents. Id. at 358-59.

The facts in this matter compel the conclusion that the forfeiture order was proper. The incidents were not isolated or aberrational. In the course of two years, police responded to five complaints of domestic disputes. As we explained in Z.L., "[e]ach such complaint, despite appellant's characterizations, wherein appellant's spouse felt compelled to require police assistance, is imbued with the potential for violent reaction. The presence of a firearm in such a household enhances the potential for such reactions to become lethal." Ibid.

We decline to second-guess the trial judge's conclusion that, at the time of the hearing, denying the State's application would not be in the interest of public health, safety, or welfare. N.J.S.A. 2C:58-3(c)(5).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3426-16T4