**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2471-20

IN THE MATTER OF THE
SEIZURE OF WEAPONS
BELONGING TO C.T.

_____

Submitted May 10, 2022 – Decided June 30, 2022

Before Judges Fisher and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0406-20.

Michael J. Muller, attorney for appellant C.T.

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Angeline M. Larrivee, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    C.T.[1] appeals from a February 8, 2021 order granting the State's motion

for the forfeiture of his weapons and revocation of his firearms purchaser

---

[1] We use initials to protect the privacy of the involved individuals. R. 1:38-3(d)(10).

identification card (FPIC) after the issuance of a temporary restraining order to protect his wife. We affirm for the reasons expressed by the court in its February 5, 2021 oral decision.

In June 2019, C.T.'s wife, T.T.,[2] called the Totowa Police Department (TPD) reporting that C.T. "seemed depressed and possibly suicidal." The responding officer testified that when he arrived at the residence, C.T. stated that he "was sad and emotional" due to his recent loss of employment and separation from his wife. After hearing this statement and observing C.T., the officer "felt it was necessary" to call an ambulance to take C.T. to a local hospital for a psychological evaluation.

Although C.T. remained at the hospital overnight, within minutes of his admission, he asked to be discharged, stating he would run away if he was not discharged soon. The evaluating psychiatrist diagnosed C.T. with "[p]assive suicidal ideations," "[d]epression," and "[s]uicidal behavior." However, the doctor did not find C.T. was suicidal or homicidal at the time of the evaluation and did not require an involuntary admission. The doctor referred C.T. to outpatient behavioral healthcare providers. The psychiatrist also recommended

---

[2] At the time of the hearing, C.T. and T.T. were separated. T.T. lived in Virginia with the couple's thirteen-year-old son, while C.T. remained in New Jersey.

A-2471-20

the family remove any firearms located in the home prior to C.T.'s discharge. When C.T.'s brother picked him up from the hospital, he agreed to remove the firearms and keep them at his own house.

In October 2019, T.T. applied for and was granted a TRO.[3] In her complaint, T.T. alleged C.T. harassed her, made verbal threats, and called her "at least 7-8 times a day." T.T. stated defendant's behavior had been ongoing since she dismissed a prior TRO in 2017. After the issuance of the TRO, police seized C.T.'s weapons from his brother's residence—including a .40-caliber Glock 23 and a Remington 870 12-gauge shotgun.

The State subsequently moved for forfeiture of the weapons and FPIC pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to - 35.

In June 2020, police responded to T.T.'s call that C.T. struck their 13-year-old son with a baton during a verbal dispute.[4] The son said he was playing a video game and was getting "pretty loud" when C.T. struck him with a wooden

_____

[3] The court also granted T.T.'s application for a TRO in 2017. In that complaint, T.T. alleged C.T. was harassing and stalking her. The TRO also referenced prior threats by C.T. to "smash [his wife's] teeth in" and strangle T.T., as well as incidents of C.T. punching and kicking his wife. T.T. later dismissed the TRO. Police returned C.T.'s weapons to him after the TRO was dismissed.

[4] T.T. did not witness this incident. Her son called her, and she called the police.

baton. However, the son changed his story several times and eventually told the officers that he "made the story up because he wanted to visit his mother." Nevertheless, the officers seized the batons.

During the hearing, C.T. testified that he obtained his first weapon when he was nineteen years old. He stated he had never threatened anyone with his weapons and had no criminal history. He also explained he has a gun safe and trigger locks and does not keep ammunition in his gun safe. C.T. stated that after his weapons were returned to him following the dismissal of the 2017 TRO, there were no issues. And T.T. had dismissed all of the restraining orders.

During T.T.'s testimony, she stated that she did not oppose the return of C.T.'s weapons to him. She said he had never used the weapons or threatened to use the weapons against her. But she did not want her son to be around the firearms. She also explained to the court that she wanted to maintain a civil relationship with C.T. because they were still married "and [she was] trying to gain a civil situation wher[e] . . . we can have communications for our son, and . . . an agreement about the needs of . . . our son." T.T. told the court she did not want to testify any further so she could remain on good terms with her husband.

4

On February 5, 2021, the court issued an oral decision granting the State's motion for forfeiture. The court noted that a voluntary dismissal of a domestic violence complaint does not compel the automatic return of firearms seized under the PDVA. The State can seek forfeiture when it establishes a person has any of the legal disabilities listed under N.J.S.A. 2C:58-3(c).

The court considered the issuance and dismissal of the prior TROs. It also evaluated the witness's trial testimony. The judge remarked that although T.T. did not object to the return of the weapons, her brief testimony and subsequent request to stop testifying was propelled by her desire "to keep the civil agreement or the civil relationship" with C.T. for the sake of their thirteen-year-old son. The court found that a "[r]eading between the lines" compelled the conclusion that T.T. did not want to testify or do anything that would impede her ability to maintain a civil relationship with C.T. This conclusion in conjunction with the two TROs demonstrated to the court a "somewhat disturbing pattern of domestic violence."

In considering C.T.'s testimony, the court noted his obvious interest in the case and his desire to have his weapons returned. The judge also found C.T. was not truthful about his hospital stay. C.T. testified he never threatened to leave the hospital. But the hospital records included entries indicating C.T.

repeatedly requested to leave the hospital and threatened that he would "likely run away if he is not . . . seen soon." The court found C.T.'s "tendency to gloss over things" reflected negatively on his overall credibility. And although the court commended C.T. for having a gun safe and trigger guards, the court recognized that these measures are only safety protocols that would prevent others from using his weapons.

The court also reviewed C.T.'s hospital discharge summary, the diagnoses, and recommendations for a behavioral health follow-up and outpatient counseling. The court was concerned that C.T. understated his mental health issues.

Therefore, in looking at the totality of the circumstances, the court granted the State's motion and ordered C.T. to forfeit his weapons, finding the State had proven by a preponderance of the evidence that the return of the weapons would not be in the interest of the public health, safety, or welfare.

In reviewing a Family Part order requiring the forfeiture of weapons seized after the issuance of a TRO, we generally give the Family Part's evaluation "heightened deference." In re F.M., 225 N.J. 487, 512 (2016). We defer to a Family Part judge's factual findings because of their expertise and special training in family matters. Id. at 506. We will not disturb the Family

A-2471-20

Part's factual findings and legal conclusions "unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

The right to bear arms under the Second Amendment of the United States Constitution is subject to reasonable limitations. Ibid. (citing D.C. v. Heller, 554 U.S. 570, 626 (2008)). Under the PDVA, a law enforcement officer who has probable cause to believe that a person has committed an act of domestic violence against another shall "seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury." N.J.S.A. 2C:25-21(d)(1)(b); See also State v. Harris, 211 N.J. 566, 580 (2012).

Within forty-five days of the seizure, the State can petition the Family Part for a forfeiture order. N.J.S.A. 2C:25-21(d)(3). An individual's firearms, weapons, and any authorization papers will be returned if the court determines

> the owner is not subject to any of the disabilities set forth in N.J.S.A. 2C:58-3(c) and finds that the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.
>
> [N.J.S.A. 2C:25-21(d)(3).]

7

Disabilities that would disqualify an individual under N.J.S.A. 2C:58-3(c) include "where the issuance would not be in the interest of the public health, safety or welfare," as well as to "any person who is subject to a restraining order issued pursuant to the [PDVA]." N.J.S.A. 2C:58-3(c)(5), (6).[5]

Even if the domestic violence complaint is dismissed, the court may still order forfeiture of an individual's weapons if the individual is subject to any disability enumerated under N.J.S.A. 2C:58-3(c). State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004). This is because the legislative intent of N.J.S.A. 2C:58-3(c) is that "a court should not return weapons to a defendant who is a threat to the public health, safety, or welfare. The contrary result—the return of weapons to a defendant who is a threat to the public—would be an invitation to a tragedy." In re J.W.D., 149 N.J. 108, 116 (1997). And a court may consider an individual's history of domestic disputes as evidence that they present a danger to the public health, safety, and welfare. See In re Z.L., 440 N.J. Super. 351, 358-59 (App. Div. 2015) (finding that the trial court did not err in considering an individual's history of domestic disputes, even where no temporary TRO or final restraining order was issued).

---

[5] N.J.S.A. 2C:58-3(c) includes eleven disabilities, but only (5) and (6) are pertinent to this appeal.

Here, the court found that "looking at the totality of the circumstances," the State had demonstrated C.T.'s weapons should be forfeited. The Family Part judge heard testimony, considered the proffered evidence, and made credibility determinations. The court noted the issuance of two TROs, T.T.'s reluctance to testify because she wished to maintain a civil relationship with C.T., and the diagnoses of "passive suicidal ideations, depression, [and] suicidal behavior." The court found that returning C.T.'s weapons would not be in the "interest of public health, safety, or welfare" under N.J.S.A. 2C:58-3(c). The forfeiture ruling was supported by sufficient credible evidence.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION