**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0127-24

IN THE MATTER OF THE
APPEAL OF THE DENIAL OF
E.F.'S APPLICATION FOR A
FIREARMS PURCHASER
IDENTIFICATION CARD AND
A PERMIT TO PURCHASE A
HANDGUN.

_____

Submitted December 2, 2025 – Decided March 13, 2026

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. GPA-0021-23.

Evan F. Nappen Attorney at Law PC, attorneys for appellant E.F. (Robert B. Bell, of counsel and on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

E.F. appeals from the August 2, 2024 order of the Law Division denying

his application for a firearms purchaser identification card (FPIC) and permit to

purchase a handgun (PPH) because he knowingly falsified information in his application, N.J.S.A. 2C:58-3(c)(3), and was "lacking the essential character of temperament necessary to be entrusted with a firearm[,]" N.J.S.A. 2C:58-3(c)(5).[1]  We affirm.

I.

On May 27, 2023, E.F., then twenty-one, applied to his local police department for an FPIC and a PPH.  On the application, he answered "No" to the question:  "Have you ever been attended, treated, or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition?"

Police Sergeant Herminio Amado was assigned to investigate the application.  A background check revealed two records of concern.  First, on May 21, 2023, local police conducted a welfare check on S.S., E.F.'s juvenile cousin, with whom he lived.  E.F.'s parents were S.S.'s aunt and uncle and served as her guardians during the school year.  S.S.'s middle school reported to police S.S. emailed a guest speaker at the school and said she purposely cut herself. Sergeant Earl Kash Cruise responded to the residence and interviewed S.S., who

---

[1]  We refer to E.F. and his cousin by their initials to protect the confidentiality of their juvenile mental health records.  R. 1:38-3(a)(2).

A-0127-24

admitted she intentionally cut her ankle two days earlier. Cruise saw a superficial cut on S.S.'s ankle, which had developed a scab. According to Cruise, S.S. said multiple times she did not want to hurt herself, but felt frustrated and angry. Cruise informed E.F.'s parents of S.S.'s self-inflicted injury and recommended she receive a mental health screening at the hospital.

Cruise, who knew E.F.'s father had an PPH, asked if there were firearms in the home. E.F.'s father acknowledged he had multiple firearms. Cruise asked for consent to remove the firearms for S.S.'s safety, but E.F.'s father refused, saying he did not think there was a link between his firearms and S.S.'s self-harm. Cruise then applied for a temporary extreme risk protective order pursuant to the Extreme Risk Protective Order Act of 2018, N.J.S.A. 2C:58-20 to -32, to remove the weapons from the home. A court denied that application.

Second, the background check revealed records of a March 2015 incident involving E.F. when he was in middle school. On March 12, 2015, the school's guidance counselor reported to a school resource officer that E.F., then twelve, wrote a two-page document which "reference[d] working with ISIS and the Russian mafia," and stated "six police cars come for me but before they notice, they step on a pressure plate and KABOOM!!!! The police cars are now pieces of metal scraps." According to the report, E.F. underwent psychological testing,

was determined not to be a danger, and returned to school. E.F. was given in-school lunch suspensions during which he was required to meet with the assistant principal to discuss the issues raised by his writing.

After reviewing the reports identified in the background check, Amado contacted E.F. to determine if S.S. still resided in the home. E.F. confirmed S.S. remained in the home during the school year. Amado considered S.S.'s presence in the home to disqualify E.F. from receiving an FPIC and a PPH because S.S., if an adult, would be disqualified from receiving an FPIC and a PPH.

On November 27, 2023, the police chief sent E.F. a letter stating his application was denied. According to the letter,

> [t]he reason for the denial is specifically because you stated you still live at a residence with a person who is also a disqualified person from owning firearms, specifically [S.S.], who made comments and actions in regards to harming herself in May of 2023. The reason for your denial is that it would not be in the interest of the public health, safety, or welfare; this makes you subject to the disabilities of N.J.S.A. 2C:58-3[(c)](5), and prohibits the issuance of [an FPIC] and [a PPH].

E.F. appealed the denial to the Law Division. On July 16, 2024, the court held a hearing at which Amado, Cruise, and E.F.'s mother testified.[2]

---

[2] After E.F. appealed the denial of his application, the county prosecutor moved to revoke E.F.'s father's FPIC. The trial court held a joint hearing on the two

4

At the hearing, Amado described his investigation as detailed above. He acknowledged the denial of E.F.'s application was not based on the 2015 incident involving E.F.'s written submission. Cruise recounted his interaction with S.S., E.F., and E.F.'s father in 2023 as detailed above. E.F., who was self-represented, cross-examined the State's witnesses, but declined to testify.

E.F.'s father, who also was self-represented, called E.F.'s mother as a witness. She testified S.S. was evaluated at a local hospital after her interaction with Cruise and cleared to return to school that day. The school offered counseling to S.S., who attended one or two sessions before deciding she did not need counseling "because she felt she was totally fine."

With respect to the 2015 incident, E.F.'s mother testified E.F.'s teacher gave the students a list of words, some of which related to bombings, to incorporate in a story. According to his mother, E.F. wrote what he thought would be entertaining to his peers. She recalled the school required E.F. be evaluated by a psychiatrist. After one session, the psychiatrist cleared E.F. to return to school. E.F.'s mother also testified E.F.'s father was the only person with access to the guns in the residence.

_____

matters. The subsequent revocation of E.F.'s father's FPIC is not before this court.

Over the State's objection, the court admitted two documents.  The first, prepared by a physician, stated S.S. did not currently suffer any psychiatric problems.  The second, prepared by a school counselor, stated S.S. did not make any threat to herself or others during the May 2023 incident and had not expressed any such threats since.

In his summation, the assistant prosecutor argued E.F. knowingly falsified his application when he responded "no" to the question inquiring whether he had ever been "attended, treated, or observed by any doctor or psychiatrist . . . on an inpatient or outpatient basis for any mental or psychiatric condition."  The assistant prosecutor contended answering "yes" to the question would not have automatically disqualified E.F. from receiving an FPIC and a PPH, but would have put Amado on notice to further investigate E.F.'s mental health.  Thus, he asserted E.F.'s false answer was a ground for denial of his application pursuant to N.J.S.A. 2C:58-3(c)(3) (disqualifying "any person who knowingly falsifies any information on the application form for a [PPH] or [FPIC.]").

In his summation, E.F. argued the relevant application question concerned treatment for a mental or psychiatric condition and because he did not believe he had a mental or psychiatric condition, he answered the question truthfully.  In addition, E.F. asserted his "no" answer did not hamper Amado's investigation

6

A-0127-24

because the background check put Amado on notice of the 2015 incident, which he investigated unhampered by E.F.'s answer.

On July 31, 2024, the court issued an oral decision denying E.F.'s application. The court found the State established E.F. was disqualified from being issued an FPIC and a PPH under N.J.S.A. 2C:58-3(c)(5) as a person "lacking the essential character of temperament necessary to be entrusted with a firearm" because S.S. would be disqualified from being issued an FPIC and a PPH if she were an adult. The court reasoned:

> [S.S.] made allegations of suicidal thoughts as well as having a desire to harm herself which she eventually carried out by cutting herself on her ankle.
>
> Keeping firearms in the home would not only be a risk to S.S. but also to the public at large. The fact that S.S. lives with [E.F.] and her prior mental health history that only occurred a little over a year ago, makes [E.F.] . . . disqualified as well.

The court noted it "heard no testimony as to how the guns are stored, the type of safe, if any[,] that they are stored in or any other specifics whatsoever as to the access anyone else in the household would have to the weapons."

The court also found E.F. disqualified under N.J.S.A. 2C:58-3(c)(3). The court found E.F. had been attended, treated, or observed by a psychiatrist for a

A-0127-24

mental or psychiatric condition after the 2015 incident contrary to the answer he gave on his application.

The court entered an August 2, 2024 order memorializing its decision. This appeal followed.

E.F. argues: (1) the trial court erred in finding E.F. knowingly falsified the application; (2) the trial court abused its discretion when it concluded E.F. was disqualified from having an FPIC and a PPH because he lived with S.S.; (3) cohabitation with a person who is disqualified from having an FPIC and a PPH is not a basis for disqualification under N.J.S.A. 2C:58-3(c)(5); and (4) N.J.S.A. 2C:58-3(c)(5) violates the Second Amendment and is contrary to the holdings in N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022), and United States v. Rahimi, 602 U.S. 680 (2023).

II.

Applications for an FPIC or PPH are governed by N.J.S.A. 2C:58-3. The statutory framework "recognizes that the right to possess firearms is presumed, except for certain good cause." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015) (citing N.J.S.A. 2C:58-3(c)). The statute lists a series of disqualifying circumstances including . . . one that specifically provides that no FPIC or PPH shall be issued "to any person who knowingly falsifies any information on the application form for a [PPH] or [FPIC]." N.J.S.A. 2C:58-3(c)(3).

A-0127-24

[In re Appeal of Denial of R.W.T.'s Application for Firearms Purchaser Identification Card, 477 N.J. Super. 443, 460-61 (App. Div. 2023).]

In addition, the statute bars issuance of an FPIC and a PPH "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare because the person is found to be lacking the essential character of temperament necessary to be entrusted with a firearm[.]" N.J.S.A. 2C:58-3(c)(5).

> The statute requires the chief police officer or the superintendent of the State Police "to investigate the application to determine whether or not the applicant has become subject to any of the disabilities set forth in this chapter." N.J.S.A. 2C:58-3(e). A police chief's denial of an application for an FPIC/PPH is subject to de novo review by the Law Division. In re Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003) (citing Weston v. State, 60 N.J. 36, 45 (1972)). "The chief has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Ibid. "[I]n evaluating the facts presented by the [c]hief, and the reasons given for rejection of the application the court should give appropriate consideration to the [c]hief's investigative experience and to any expertise he appears to have developed in administering the statute." Weston, 60 N.J. at 46.
>
> [In re R.W.T.'s Application, 477 N.J. Super. at 461 (alterations in original).]

We accept the trial court's findings of fact after a firearms licensing hearing provided they are supported by substantial credible evidence. In re

9

Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997).  We review the trial court's legal conclusions de novo.  In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015).

Our review of the record revealed substantial credible evidence supporting the court's conclusion by a preponderance of the evidence E.F. was disqualified from being issued an FPIC and a PPH under N.J.S.A. 2C:58-3(c)(3) because he knowingly falsified information on his application.

We are guided in our analysis by the holding in In re R.W.T.'s Application, 477 N.J. Super. at 456-76, which arises from similar facts.  There, R.W.T. applied for an FPIC and a PPH.  Id. at 456.  Like E.F., he answered "no" to the question "[h]ave you ever been attended, treated, or observed by any doctor or psychiatrist or at any hospital or mental institution on an inpatient or outpatient basis for any mental or psychiatric condition?"  Id. at 457.  At the evidentiary hearing in the Law Division after he appealed the denial of his application, R.W.T. admitted he had in fact been treated by a psychiatrist in college for "a sports performance issue that was deemed to be a mental block."  Ibid.  After further questioning, R.W.T. admitted he underwent marriage counseling, but did not recall if the sessions were with a psychologist or psychiatrist, and received counseling to deal with post-divorce issues.  Ibid.

A-0127-24

When asked why he did not report the sports performance counseling, R.W.T. said the doctor did not deem the condition to be a "significant mental illness." Id. at 458. R.W.T. "admitted that when he filled out the application, he recalled visiting the psychiatrist." He stated, "[t]he reason I answered no, Your Honor, is I didn't know that that qualified as a mental condition for these purposes. I thought it was some simpl[e] therapy." Ibid. (alterations in original). The court concluded R.W.T. knowingly falsified information on his application, disqualifying him from being issued an FPIC and a PPH. Id. at 458-59.

On appeal, R.W.T. argued, among other things, "the trial court erred in applying the falsification disqualification criterion because the information [he] failed to disclose on the application was irrelevant and immaterial." Id. at 460. He also challenged the constitutionality of the provision. Id. at 463-64.

We rejected R.W.T.'s constitutional challenge to the falsification provision. After noting the Court in Bruen upheld the validity of shall-issue state licensing regimes like the one established by our statutes, id. at 464-66, we held:

> Because Bruen allows states to require individuals to apply for a firearm license/permit, it logically follows that those states may also require the information in the application be complete and truthful. We deem a falsification disqualification feature integral to and inseparable from the inherent structure of a gun-

11

> licensing regime. Because the United States Supreme Court has already endorsed the concept of shall-issue licensing regimes, we must presume that an implementing law safeguarding the integrity of any such regime by insisting the application is complete and truthful will likewise pass constitutional muster.
>
> [Id. at 466.]

We continued, "[i]t is clear the Second Amendment's plain text does not cover lying on an application." Id. at 467.

We noted that to disqualify an applicant under the falsification provision, the State must establish by a preponderance of the evidence the applicant knowingly falsified information on the application. We rejected R.W.T.'s argument disqualification applies only if the applicant falsifies relevant and material information. Id. at 467-68. We observed the plain language of N.J.S.A. 2C:58-3(c)(3) applies to any false information and a materiality element that might be necessary in the criminal context does not apply to a regulatory provision not designed to impose punishment. Id. at 468-69.

In addition to noting that truthful answers alert the investigating officer to issues in need of follow-up, we held, "the Legislature's decision to mandate disqualification for any knowingly false statement serves as an incentive for FPIC/PPH applicants to be complete in their answers. It also discourages applicants from making their own judgment of what information might be

A-0127-24

relevant." Id. at 470. As we noted, "it is for a Law Division judge after a hearing, not an applicant before the hearing, to determine whether evidence of mental health treatment warrants denying an FPIC/PPH application." Ibid. (citing Osworth, 365 N.J. Super. at 77).[3]

Given our deferential standard of review, we find no basis on which to reverse the trial court's finding E.F. falsified his answer to the question regarding his mental health. There is no dispute E.F. was removed from school following his writing a violence-laced narrative which referenced working with ISIS and the Russian mafia and blowing up police officers as they pursued E.F. Nor is it disputed E.F. was required to undergo an evaluation by a psychiatrist before he was permitted to return to school.

E.F. did not testify at the hearing. As a result, the record contains no evidence E.F. did not remember the incident or his psychiatric evaluation when he answered the question. During his summation, which was not subject to cross-examination, E.F. argued he did not answer "yes" to the question because he did not believe he had a mental or psychiatric condition at the time he was

---

[3] Notably, the application completed by E.F. includes the following statement: "I hereby certify that the answers given on this application are complete, true and correct in every particular. I realize that if any of the foregoing answers made by me are false, I am subject to punishment. Falsification of this form is a crime of the third degree as provided in [N.J.S.A.] 2C:39-10c."

evaluated. E.F., therefore, implicitly acknowledged he remembered the evaluation, and admitted he did not answer the question in the affirmative because he made the subjective determination he did not have a mental or psychiatric condition warranting disclosure. This is precisely the excuse for failing to truthfully answer the question we rejected in R.W.T.

Nor are we persuaded by E.F.'s arguments the question is ambiguous and Amado was not stymied in his investigation because the 2015 psychiatric evaluation was revealed during the background check. The question plainly asks if the applicant has ever been attended, treated, or observed by a psychiatrist for a mental or psychiatric condition. In addition, the falsification disqualification applies regardless of whether the applicant's false answer impeded the subsequent investigation of the applicant's suitability for issuance of an FPIC and a PPH. We also see no support for E.F.'s argument the trial court erred because the falsification disqualification was not cited as a basis for denial in the police chief's letter.

Having found no error in the trial court's conclusion E.F. was disqualified from being issued an FPIC and a PPH under N.J.S.A. 2C:58-3(c)(3), we need not address whether the court erred when it found E.F. disqualified under

14

N.J.S.A. 2C:58-3(c)(5), or E.F.'s constitutional challenge to that provision, which he raised for the first time on appeal.

"For sound jurisprudential reasons, with few exceptions," State v. Witt, 223 N.J. 409, 419 (2015), which are inapplicable here, "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available," State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)). In addition, we are mindful of the general principle that "[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation." Randolph Town Ctr., LP v. Cnty. of Morris, 186 N.J. 78, 80 (2006).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division