710 A.2d 582 (1998)
311 N.J. Super. 509
STATE of New Jersey, Plaintiff-Respondent,
v.
Raymond FREYSINGER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1998.
Decided May 29, 1998.
Christian J. Lang, Hazlet, for defendant-appellant (Rudnick, Addonizio, Pappa & Comer, attorneys; James J. Addonizio, of counsel; Mr. Lang, on the brief).
Mark P. Stalford, Assistant Prosecutor, for plaintiff-respondent (John Kaye, Monmouth County Prosecutor, attorney; Mr. Stalford, of counsel and on the brief).
Before Judges KING, MUIR, Jr., and CUFF.
The opinion of the court was delivered by CUFF, J.A.D.
Defendant, Raymond Freysinger, appeals from an order granting the State's application to forfeit firearms and a knife seized from his home according to the terms of a temporary restraining order issued pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -33. Following an evidentiary hearing, Judge O'Hagan found that the State sustained its burden that Freysinger was presently an habitual drunkard and granted the State's motion for forfeiture while denying Freysinger's motion for the return of his seized guns and hunting knife. On appeal, Freysinger argues that the record does not support the finding that he is presently an habitual drunkard as defined by N.J.S.A. 2C:58-3c(2). We affirm.
Defendant and his girlfriend, Jane Schappert, have lived together for fourteen years. Ms. Schappert's daughter, who was seventeen *583 at the time of this incident, also lives with the couple.
On August 22, 1995, Ms. Schappert and a friend, Linda Conway, arrived at a local bar between 4 and 5 p.m. to celebrate Jane Schappert's passing her nursing boards. The bar is a short distance from the house in which defendant and Jane Schappert reside.
At around 9:30 p.m., defendant got off work and went to the same bar. According to Ms. Schappert, she did not have a conversation with defendant and immediately left the bar and proceeded to walk home. According to defendant, he had a brief conversation with Ms. Schappert about why she was out with her friend but they did not argue. Defendant stated that when she got up and walked away, he believed that she was going to the ladies room. Defendant claims that, without speaking further to her, he decided to leave the bar in his car which was parked outside.
According to Ms. Schappert, after she began walking home from the bar, she stopped briefly to sit down by the side of the road. She then got up and walked across the street and proceeded toward her house. At this point she remembers being struck by a car and falling to the ground. She was taken to the hospital and was released early the next morning. She suffered only bumps and bruises.
Defendant admitted that he was aware that he "clipped somebody down the road" on his way home from the bar that evening but did not stop to investigate. He claimed he did not know he hit his girlfriend. He also insisted that he was not drunk.
Moments after the collision, defendant arrived at his home, parked his car in the driveway and went to bed. After arriving at the accident scene and speaking with several witnesses, Patrolman George Hoff and his partner went to defendant's home. The officers observed defendant's vehicle in the driveway, noticed the missing right side view mirror, and determined that it was the vehicle involved in the accident. The officers knocked on the door for several minutes until defendant finally awakened and opened the door.
According to the officers, defendant was cooperative and allowed them to search his room. The officers located a tan shirt which matched a description of what defendant was wearing that evening at the bar. The officers then placed defendant under arrest. The officer in charge, Patrolman White, ordered that the incident be treated as a domestic violence incident. Pursuant to N.J.S.A. 2C:25-21d(1)(b), the officers confiscated three shotguns and one knife from defendant's gun case.
As a result of this incident, defendant was charged with a variety of offenses including assault by auto, driving while under the influence of alcohol, reckless driving, and leaving the scene of an accident. Pursuant to a plea bargain, defendant plead guilty to driving under the influence of alcohol.
Also as a result of this incident, Ms. Schappert filed a domestic violence complaint and obtained a temporary restraining order on August 23, 1995. On September 5, 1995, Ms. Schappert and defendant appeared before Judge O'Hagan to dismiss the complaint and dissolve the restraining order because she and defendant had reconciled. At the hearing, Ms. Schappert admitted that in June 1995, she filed a domestic violence complaint after defendant threw an ashtray at a china closet during an argument. She also dismissed this complaint. Ms. Schappert and defendant continue to reside together.
On May 21, 1996, the State filed a motion for the forfeiture of weapons seized and for the revocation of any and all permits, licenses and other authorizations held by defendant for the use, possession and ownership of weapons. A hearing on the matter was held before Judge O'Hagan on August 1, 1996.
At the hearing the State presented a couple of theories to support the forfeiture of defendant's weapons: that defendant was presently an habitual drunkard contrary to N.J.S.A. 2C:58-3c(2) and/or an alcoholic contrary to N.J.S.A. 2C:58-3c(3), and that defendant was dangerous to the public health, safety or welfare contrary to N.J.S.A. 2C:58-3c(5).
At the hearing, defendant stipulated that he was convicted of driving under the *584 influence of alcohol or drugs and refusing to submit to chemical tests in 1982. Defendant was also convicted of reckless driving and failing to submit to chemical tests in 1992. Finally, defendant was convicted of driving while under the influence of alcohol as a result of the 1995 plea in connection with the incident with Ms. Schappert.
Defendant testified that at the time of the hearing he had not had a drink for three months. He stated that he has been attending AA meetings since his 1995 guilty plea and that he attended the Alcoholics Countermeasure Program. Defendant attended AA meetings two or three years before the incident but he stopped going to the meetings after a while. Defendant described himself as an occasional drinker who drank a six-pack at a time.
Defendant claimed that the confiscated shotguns were used strictly for deer hunting and were always kept unloaded in a locked case. The guns were given to defendant by his father when he was fourteen. There is no allegation in this record that defendant ever misused the guns or the knife.
On January 29, 1997, Judge O'Hagan granted the State's application to forfeit defendant's weapons, concluding that defendant is presently an habitual drunkard. Defendant argues that Judge O'Hagan erred in concluding that he is presently an habitual drunkard as described in N.J.S.A. 2C:58-3c(2). Defendant contends that his driving infractions occurred in the distant past and that Ms. Schappert does not regard him as an habitual drunkard. According to defendant, the statute distinguishes between "presently habitual drunkards" and people who have ceased being "habitual drunkards."
Defendant's weapons were initially confiscated pursuant to N.J.S.A. 2C:25-21d(1)(b) of the Prevention of Domestic Violence Act. That provision states:
d.(1) In addition to a law enforcement officer's authority to seize any weapon that is contraband, evidence or an instrumentality of crime, a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed may:
....
(b) upon observing or learning that a weapon is present on the premises, seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury.

[N.J.S.A. 2C:25-21d(1)(b).]
The statute requires the prosecutor, upon notice to the owner of the seized weapons, to petition the court for forfeiture within 45 days. State v. Volpini, 291 N.J.Super. 401, 414, 677 A.2d 780 (App.Div.1996). The prosecutor can object to the return of weapons "on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular." Ibid. (quoting N.J.S.A. 2C:25-21d(3)). A weapons hearing is then held in the Family Part of the Superior Court within 15 days of notice to the owner. State v. Solomon, 262 N.J.Super. 618, 622, 621 A.2d 559 (Ch.Div. 1993). If the court determines that the owner is unfit, the weapons are either sold with the proceeds going to the owner, or transferred at the request of the owner to someone fit to possess them. State v. Cunningham, 186 N.J.Super. 502, 513, 453 A.2d 239 (App.Div.1982).
The Prevention of Domestic Violence Act permits confiscated weapons to be returned to their owner in three situations:
[I]f the complaint has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists.

[N.J.S.A. 2C:25-21d(3). ]
Although the statute at first glance appears to require the return of confiscated weapons in situations where a domestic violence complaint has been dismissed at the request of the complainant, the Supreme Court has recently held otherwise. See In re Return of Weapons to J.W.D., 149 N.J. 108, 693 A.2d 92 (1997). In J.W.D. the Court held that the Family Part has the power to retain confiscated weapons even after a domestic violence complaint has been dismissed. Id. at 110, 693 A.2d 92.
*585 The Court stated that N.J.S.A. 2C:25-21d(3) implicitly refers to N.J.S.A. 2C:58-3, the statute that regulates the issuance of purchaser identification cards for firearms. Id. at 115, 693 A.2d 92. The Court noted:
No handgun purchase permit or firearms purchaser identification card shall be issued... [t]o any person where the issuance would not be in the interest of the public health, safety or welfare.

[Ibid. (quoting N.J.S.A. 2C:58-3c(5)). ]
The two statutes, when read together, reflect an intent by the Legislature that confiscated weapons should not be returned to defendants who are threats to the public health, safety or welfare. Id. at 116, 693 A.2d 92. The Court concluded, therefore, that the Legislature intended to authorize courts to retain the weapons of defendants who pose a threat to the public health, safety or welfare. Ibid.
Our review of the factual findings is limited. Our role is solely to examine the record to determine whether the facts found by the trial judge are reasonably supported by the record in its entirety. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). In this case, the findings concerning defendant's past abuse of alcohol and the events of August 22, 1995, are not only fully supported by the record but also largely undisputed. Here, the central issue is whether Judge O'Hagan correctly applied the law governing forfeiture of weapons to the facts.
Judge O'Hagan granted the State's motion for the forfeiture of defendant's weapons, holding that defendant is an habitual drunkard pursuant to N.J.S.A. 2C:58-3c(2). Like the Court in J.W.D., Judge O'Hagan ordered the forfeiture of defendant's weapons even though the domestic violence complaint had been dismissed. The pertinent part of N.J.S.A. 2C:58-3 reads:
c. Who may obtain. No person of good character and good repute in the community in which he lives, and who is not subject to any of the disabilities set forth in this section or other sections of this chapter, shall be denied a permit to purchase a handgun or a firearms purchaser identification card, except as hereinafter set forth. No handgun purchase permit or firearms purchaser identification card shall be issued:
....
(2) To any drug dependent person ... to any person who is confined for a mental disorder to a hospital, mental institution or sanitarium, or to any person who is presently an habitual drunkard. (emphasis supplied).
There are no cases that define what it means to be "presently an habitual drunkard" under this statute. In the matrimonial context, N.J.S.A. 2A:34-2e, habitual drunkenness has been described as "a fixed, frequent, irresistible or regular habit of drinking alcoholic beverages in such excessive quantities as to produce drunkenness." McVey v. McVey, 119 N.J.Super. 4, 6, 289 A.2d 549 (Ch.Div.1972); see also Scully v. Scully, 122 N.J.Super. 94, 96, 299 A.2d 93 (Ch.Div.1972). In McVey, the defendant was declared an habitual drunkard based on corroborated evidence demonstrating that he was drunk four or five times a week. McVey, supra. In Scully, we emphasized that the entire conduct over the qualifying period had to be examined and a period of abstention did not negate a finding of habitual drunkenness. Scully, supra, 122 N.J.Super. at 97, 299 A.2d 93.
In his opinion, Judge O'Hagan wrote:
It might be reasonably concluded that a person who has been found guilty of driving while under the influence of alcoholic beverages on two occasions and has twice pled guilty to the refusal to submit to a breathalyser test, all within a thirteen year period, might be reasonably described as an habitual drunkard. In this instance, corroboration of such classification comes from defendant's admission at the hearing that on two separate occasions he has enrolled in, and participated in, Alcoholics Anonymous. Further, defendant's testimony at the hearing to the effect that prior to his most recent participation in AA, he, on a regular basis, that is to say at least two times a week, consumed a six pack of beer over the course of an evening, does nothing to dispel the conclusion that defendant is an habitual drunkard. Nor is such conclusion dispelled by defendant's admission that he hit a person with his vehicle yet fled from the accident scene.
*586 We concur with this analysis and affirm substantially for the reasons set forth in Judge O'Hagan's January 29, 1997 written opinion. There was sufficient proof offered at the hearing to demonstrate that defendant not only is an habitual drunkard but also poses a threat to the public health, safety and welfare. Defendant has two driving under the influence convictions and two convictions for refusing to submit to chemical tests. Most disturbingly, defendant admitted that he hit a pedestrian with his car but did not bother to stop. Instead, he drove straight home and went to bed. The record allows the inference that defendant may have hit his girlfriend purposefully after the two argued in the bar. This may explain his lack of concern for the person he struck. If defendant was being truthful when he stated that he did not know it was his girlfriend whom he hit, then defendant's actions demonstrate a complete disregard for the stranger he struck and left unattended in the roadway.
Accordingly, we conclude that the State carried its burden of proof and the trial judge properly granted the State's motion for the forfeiture of the weapons.
Affirmed.