**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4220-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARIAN VITELLO,

    Defendant-Appellant.

_____

Submitted September 11, 2017 — Decided July 9, 2018

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FO-13-0282-11.

David P. Schroth, attorney for appellant.

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Mary R. Juliano, Assistant Prosecutor, on the brief).

PER CURIAM

After an evidentiary hearing, Judge Lisa Thornton granted the State's motion, pursuant to N.J.S.A. 2C:25-21(d)(3) and N.J.S.A. 2C:58-3(c)(5), to forfeit any firearms of defendant Darian

Vitello, and to revoke his permits, licenses and authorizations to use, possess or own firearms. The court found Vitello's continued firearm ownership would not be in the interest of the public health, safety or welfare. N.J.S.A. 2C:58-3(c)(5). The court thereafter denied Vitello's motion for a new trial based on Rule 4:50-1(b) and (f), and a motion for reconsideration. In his appeal, Vitello argues the court lacked jurisdiction because the State's motion was untimely; the decision lacked support of sufficient credible evidence in the record; and the court abused its discretion in denying his Rule 4:50-1 and reconsideration motions. We affirm.

## I.

The court found that Vitello, while a Belmar police officer, mishandled his handgun on "at least three occasions against the policies of the Belmar police department and against all operating, standard operating procedures for law enforcement at times in a reckless manner, pointing them at his colleagues." The court found that on two separate occasions, several months apart, Vitello unholstered and pointed his service handgun at the ground near the feet of Luis Abreu, an unarmed Class One special police officer. Abreu testified that Vitello activated the laser sight and continued to point the weapon for roughly five minutes. In one incident, Vitello asked Abreu how he would feel if Vitello shot

him. Abreu did not believe Vitello would actually shoot, but his behavior made Abreu nervous, because accidents could happen. Abreu testified that one of the incidents was witnessed by another officer, Paul Smikovecus. The two incidents occurred in 2006 and 2007, one in the parking lot and the second inside police headquarters.

On another occasion, after a disagreement, Vitello pointed his weapon at the body of Michael Allen, then a civilian dispatcher. Allen testified that Vitello activated the laser sight and pointed his service weapon at his chest. A fellow officer, James Burdick, testified he witnessed this incident and told Vitello, in coarse language, to put his weapon away. Vitello answered he was just goofing around. Another officer, Thomas Cox, testified he observed Vitello while the weapon was unholstered, apparently after the pointing.[1]

None of the officers involved promptly reported the incidents, although Burdick stated that unholstering a service weapon under the circumstances described would violate departmental rules. However, Smikovecus, who had a prior

---

[1] We recognize that Abreu testified there were three incidents involving Vitello pointing a weapon at his feet. The court addressed only two in its findings, along with the one involving Allen, and concluded there were "at least three" incidents in which Vitello mishandled his weapon.

disagreement with Vitello, prompted an internal affairs investigation of the incidents in 2009. Chief Thomas Palmisano testified about the internal affairs investigation that he conducted. Palmisano was a lieutenant or captain at the time. The investigation led to grand jury proceedings. Apparently before any indictment was returned, Vitello pleaded guilty to an accusation charging he harassed Abreu by threatening to physically harm him; the accusation did not allege use of a weapon. See N.J.S.A. 2C:33-4(b). Defendant forfeited his public employment, and the Belmar police seized his police and personal firearms. However, Vitello did not surrender his firearms purchaser identification card (Card), because he claimed that he lost it. Vitello also did not seek a judicial order compelling the return of his weapons.

The next year, Vitello obtained a replacement Card and a Handgun Purchase Permit (Permit) upon application to the Neptune Township Police Department. He thereafter purchased a handgun for personal use. At the court's suggestion, a Neptune detective testified at the hearing about his investigation of Vitello's application. He said he never spoke to Belmar about the circumstances of Vitello's firing. He consulted with the county prosecutor's office only to confirm that the harassment conviction was not a legal impediment to issuing the Card or Permit.

4

A few months after Vitello purchased his new firearm, his girlfriend obtained a domestic violence temporary restraining order (TRO) against him, which led to the seizure of his handgun. After the girlfriend voluntarily dismissed the TRO, the State filed a motion within forty-five days of the seizure, apparently under N.J.S.A. 2C:25-21(d)(3), for the forfeiture of Vitello's weapon and revocation of his permits, licenses and authorizations for the use, possession, or ownership of such weapons; however, the State withdrew the motion without prejudice.[2] More than three months later, the State filed its motion under N.J.S.A. 2C:25-21(d)(3) and N.J.S.A. 2C:58-3, that is the subject of this appeal.

The court credited, and relied on the testimony of Abreu, Allen, Burdick and Cox, whom the State presented. The court discredited and rejected the testimony of Vitello, who denied that any of the incidents occurred. The court acknowledged various discrepancies in the testimony of the State's witnesses. However, the court generally attributed those to the passage of time between the incidents and the hearing in 2011. Allen said his incident occurred in December 2005. Burdick recalled it occurred in 2006 or 2007. Cox was even more uncertain about the timing.

---

[2] A copy of the notice of motion is not included in the record.

In granting the State's motion, the court noted that Vitello continued to deny the events occurred, refused to accept responsibility for his actions, and failed to learn from them or to demonstrate the ability to act responsibly with firearms. As noted above, the court found that defendant mishandled his firearms on at least three occasions.

Vitello appealed and, through new counsel, sought to expand the record before us. We denied his motion, permitting him instead to present that request to the trial court. Vitello's motion under Rule 4:50-1 followed. Vitello grounded his request for relief on subsection (b) — "newly discovered evidence, which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49"; and subsection (f) — "any other reason justifying relief from the operation of the judgment or order." In support of his request for a new trial, Vitello contended that an Internal Affairs investigation concluded in 2005 that allegations he mishandled his weapon were unfounded. He also relied on Burdick's employment records to demonstrate he could not have been present when Allen claimed the pointing at him occurred. He also presented emails between Vitello and Abreu, and statements from other police officials.

The court denied the motion. The court found the proffered evidence was either not newly discovered, or not material. With respect to the 2005 letter, the court noted that Vitello had testified there was no earlier Internal Affairs investigation; the letter was not newly discovered as Vitello claimed to have received it; and even if there were such a finding, it would not have changed the court's decision, as the letter did not prove that the three incidents did not occur. The court also held that Burdick's employment records would not have changed the result. Too much time elapsed for the court to hold an individual to a specific date claimed. Finally, the court found no merit in Vitello's remaining arguments and denied the motion for a new trial. The court thereafter denied a motion for reconsideration.

II.

We are obliged to "accept a trial court's findings of fact that are supported by substantial credible evidence," particularly "when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997). We review de novo the court's legal conclusions. Id. at 117.

Applying that deferential standard of review, and having carefully reviewed the record of the 2011 testimonial hearing, we

discern no basis to disturb Judge Thornton's finding, based on her thoughtful consideration of the testimony and evidence presented.

The court properly allocated to the State the burden to establish grounds for revoking Vitello's Card and Permit by a preponderance of the evidence. See In re Forfeiture of Pers. Weapons and Firearms Identification Card Belonging to F.M., 225 N.J. 487, 508 (2016) (allocating burden and standard of proof). The court's determination that defendant poses a threat to the public health, safety, or welfare was based on a careful, fact-sensitive analysis, consistent with State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004).

We reject Vitello's argument, which he based on State v. One Marlin Rifle, 319 N.J. Super. 359 (App. Div. 1999) and an unpublished decision, that the State was obliged to present "'overwhelming' evidence that Vitello currently presents a 'clear threat' to the public welfare." As noted, the standard of proof is preponderance of the evidence. The State proceeded under N.J.S.A. 2C:58-3(c)(5), which "is meant to address 'individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" F.M., 225 N.J. at 513 (quoting In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003)). The panel in One Marlin Rifle used the phrase

"generally overwhelming" simply to characterize the evidence presented in cases in which forfeiture had been ordered, in contrast to the paltry proofs before it. 319 N.J. Super. at 371-72 (citing State v. Freysinger, 311 N.J. Super. 509, 515-16 (App. Div. 1998) and Hoffman v. Union Cnty. Prosecutor, 240 N.J. Super. 206 (Law Div. 1990)). There was no finding that the firearm owner in One Marlin Rifle mishandled his weapon in any way, as Vitello did in this case.

We also discern no merit in Vitello's argument that the trial court lacked jurisdiction to entertain the State's application, because it was untimely. Vitello relies on N.J.S.A. 2C:25-21(d)(3), which provides that the State shall return seized weapons to a domestic violence defendant within forty-five days of seizure, absent a court order of forfeiture. However, by its plain language, the provision does not impose a time-bar for the filing of a forfeiture and revocation motion; it simply provides for the return of seized weapons in the absence of a timely application and order. Notably, Vitello did not formally seek the return of weapons seized after the domestic violence TRO was issued.

In any event, the State exercised its authority under chapter 58, which states that "[t]he county prosecutor . . . may apply . . . at any time for the revocation of the card," and "[a]ny firearms purchaser identification card may be revoked by the

Superior Court wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit."  N.J.S.A. 2C:58-3(f) (emphasis added); see also Hoffman, 240 N.J. Super. at 215 (ordering the forfeiture of weapons and revocation of Card based on a finding that it would not be in the interest of the public health, safety or welfare, N.J.S.A. 2C:58-3(c)(5), based on holder's "disturbing pattern of domestic violence and violence in general" and alcohol abuse).[3]

We also shall not disturb the trial court's decisions (1) to deny Vitello's motion to vacate the order and for a new trial, pursuant to Rule 4:50-1, and (2) to deny his motion for reconsideration of that denial.  Both decisions were vested in the trial court's reasoned exercise of discretion.  See Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994) (stating that decision granting or denying relief "will be left undisturbed unless it represents a clear abuse of discretion"); Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (stating that reconsideration is left to the court's "sound discretion . . . to

---

[3] While a Card remains valid until revoked, a Permit expires after ninety days, unless renewed by the issuing authority for good cause.  N.J.S.A. 2C:58-3(f).

A-4220-14T4

be exercised in the interest of justice") (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

As Judge Thornton noted, much of what Vitello sought to present to the court was not newly discovered evidence, as it was available to him in the exercise of due diligence before the original hearing. In particular, Vitello received in 2005 the purported letter concluding allegations against him were unfounded. Also, well before the hearing, Vitello had already obtained an unsworn letter from an officer who all but insinuated that Allen alleged that Vitello pointed his weapon at him in order to get Vitello fired. Besides, during cross-examination, Allen was asked if he leveled the charges at Vitello in order to secure his own position with the police department. In any event, Judge Thornton concluded that nothing Vitello unearthed would have materially affected her credibility determinations, and resulting fact-findings.

To the extent not addressed, Vitello's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                    A-4220-14T4