<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2862-19

IN THE MATTER OF
THE APPEAL OF DENIAL
OF A FIREARMS PURCHASER
IDENTIFICATION CARD
AND PERMIT TO PURCHASE
HANDGUNS FOR C.P.[1]

_____

Argued March 15, 2021 – Decided April 27, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County.

Michael J. Pappa argued the cause for appellant (Rudnick Addonizio Pappa & Casazza, attorneys; Michael J. Pappa, of counsel; Jeffrey Zajac, on the brief).

Lisa Sarnoff Gochman argued the cause for respondent (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Lisa Sarnoff Gochman, on the brief).

PER CURIAM

---

[1] We use initials to protect the confidentiality of participants in these proceedings. R. 1:38-3(c)(12); (d)(10).

C.P., a retired police officer, appeals from the March 10, 2020 Law Division order, issued following a plenary hearing, which affirmed the police chief's denial of a firearms purchaser identification card (FPIC) and permit to purchase handguns (PPH). The denial was based on C.P.'s involvement in drunk driving and domestic violence incidents and relied on N.J.S.A. 2C:58-3(c)(5), prohibiting the issuance of a FPIC or PPH "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare. . . ." At the two-day hearing conducted on January 28 and 29, 2020, C.P., his licensed alcohol and drug counselor, and the Matawan Police Chief testified, after which Judge Joseph W. Oxley made detailed findings. We affirm substantially for the reasons articulated by Judge Oxley in his comprehensive and well-reasoned March 10, 2020 written opinion.

Based on the evidence presented at the hearing, the judge made the following factual findings:

> On September 7, 2011, [C.P., then] a Lieutenant for the Old Bridge Police Department, arrived at work intoxicated. [C.P.] was given a breathalyzer, which indicated his blood alcohol concentration was 0.09%. [C.P.] was subsequently given a ticket for driving under the influence of alcohol. The ticket was transferred to the Monroe Township Municipal Court and ultimately dismissed.

A-2862-19

On May 21, 2012, [C.P.] was charged with making terroristic threats towards his ex-wife. An audio recording of [C.P.] making these threats was played before this [c]ourt. The recording consisted of [C.P.]'s intoxicated ranting for thirty-five minutes. [C.P.] made five threats to shoot and kill his ex-wife during the rant. Also, on May 30, 2012, a [TRO] was issued against [C.P.]. [C.P.]'s wife ultimately withdrew the TRO on August 6, 2012. Subsequent to this incident, on September 10, 2012, [C.P.] consented to the sale of his firearms.

On March 2, 2017, [C.P.] was arrested and charged with harassment after allegedly placing a plastic bag over his ex-wife's head. This event led to another seizure and transfer of [C.P.]'s firearms, and the forfeiture of his FPIC and PPH on November 3, 2017. A TRO was granted as a result of this incident. The TRO was ultimately dismissed on March 20, 2017.

On March 24, 2017[,] [C.P.] was involved in a single car motor vehicle accident in Old Bridge, New Jersey. [C.P.] caused damage to a highway guard rail and pole. Subsequent testing of [C.P.]'s blood revealed that he had a blood alcohol concentration of 0.266%. Police issued [C.P.] tickets for reckless driving and driving under the influence. The tickets were transferred to Perth Amboy Municipal Court and ultimately dismissed.

The judge credited the Chief's testimony at the hearing that C.P.'s "application was denied due to his prior involvement in domestic violence incidents with his ex-wife and his record of driving under the influence of alcohol." The Chief "also testified that the May 2012 audio recording of [C.P.]

3

had a significant impact on his decision to deny the application." The judge found the Chief's testimony to be "clear, candid, and convincing[,]" and the Chief to be "honest and very straightforward." The judge also found that C.P.'s counselor testified "credibl[y] and forthright[ly]" that "she began counseling [C.P.]" on "March 30, 2017," and "recommended that [C.P.] attend outpatient group therapy sessions" which he has continued to attend to date. Additionally, the judge acknowledged C.P.'s testimony that "he no longer suffers from alcoholism" and "has not been in contact with his ex-wife in three years."

In addition to the testimony, the judge considered numerous exhibits, including C.P.'s March 2, 2019 permit application; the May 7, 2019 Matawan police department firearms applicant investigation report; the May 8, 2019 Matawan police department denial letter; a September 7, 2011 driving while under the influence (DWI) Old Bridge police department incident report and related courtroom disposition printout; a September 10, 2012 order authorizing the sale of weapons; a March 2 and 6, 2017 Jackson Township police department investigation report and related complaint-summons; a March 3, 2017 order dismissing a temporary restraining order (TRO) against C.P.; a March 24, 2017 New Jersey State Police crash investigation report and related traffic summonses and courtroom disposition printout; a May 5, 2017 petition by the State to forfeit

4

weapons;[2] a November 3, 2017 order authorizing the seizure of weapons; a July 25, 2019 Family Automated Case Tracking System printout related to a domestic violence case involving C.P. and his ex-wife; an audio recording of C.P.; 2019 counseling center records for C.P.; and 2017 detox records for C.P.

After applying the governing principles, the judge concluded that issuance of an FPIC and PPH to C.P. would not be in the best interest of the public health, safety, or welfare within the meaning of N.J.S.A. 2C:58-3(c)(5). The judge acknowledged that his "primary responsibility [was] to determine [C.P.'s] current fitness to possess a firearm by conducting a fact-sensitive analysis" and "carefully consider[ing C.P.'s] history of interactions with specific individuals as well as an assessment of the threat he . . . may pose to the general public." See Cordoma, 372 N.J. Super. at 535 ("[A] judicial declaration that a defendant poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis" and "requires a careful consideration of both the individual history of defendant's interaction with the former plaintiff in the

---

[2] Notwithstanding "the voluntary dismissal of a domestic violence complaint," "[w]ithin forty-five days of seizure, the State can petition the Family Part for a forfeiture order 'to obtain title to the seized weapons, or to revoke any and all permits, licenses and other authorizations for use, possession, or ownership of such weapons.'" State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004) (quoting N.J.S.A. 2C:25-21(d)(3)).

domestic violence matter, as well as an assessment of the threat a defendant may impose to the general public.").

The judge reasoned:

> [C.P.] has been involved in two incidents of drunk driving, two incidents of domestic violence, and has had his guns seized on two separate occasions. Although [C.P.] continues to seek treatment to address his alcohol addiction and has not had an encounter with his ex-wife in three years, this [c]ourt does not find that issuing [C.P.] a FPIC and [PPH] would be in the best interest of the public health, safety, or welfare.

On appeal, C.P. makes the following arguments for our consideration:

> BECAUSE [C.P.] WAS NOT A HABITUAL DRUNKARD AND DID NOT POSE A THREAT TO THE PUBLIC HEALTH, SAFETY, OR WELFARE, THE LAW DIVISION ERRED IN AFFIRMING THE DENIAL OF [C.P.'S] FIREARMS APPLICATION.
>
> A.    At the Time of His Firearms Application, [C.P.] Was Not a "Habitual Drunkard" Under Subsection (c)(2) Of N.J.S.A. 2C:58-3.
>
> B.    Denial Of [C.P.'S] Firearms Permit Under Subsection (c)(5) Lacks Merit and Constitutes Reversible Error.

A-2862-19

We reject both of C.P.'s contentions. First, Judge Oxley did not rely on subsection (c)(2)[3] in upholding the denial of the firearms application. Second, in light of the record and the law, the judge's reliance on subsection (c)(5) is amply supported by the evidence and legally sound. We add the following comments for elucidation.

We defer to a trial court's factual findings when they are "supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Invs. Ins. Co. of America, 65 N.J. 474, 484 (1974). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is because the trial court has the opportunity to see and observe witnesses and hear them testify. Ibid. Only when "they are so wholly insupportable as to result in a denial of justice," should we disturb the factual findings of a trial court. Rova Farms, 65 N.J. at 483-84 (quoting Greenfield v. Dusseault, 60 N.J. Super. 436, 444 (App. Div. 1960)). On the other hand, "[w]e review a trial court's legal conclusions

---

[3] N.J.S.A. 2C:58-3(c)(2) provides in pertinent part that "[n]o handgun purchase permit or firearms purchaser identification card shall be issued . . . to any person who is presently an habitual drunkard. . . ."

regarding firearms licenses de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015).

In order to purchase a handgun or firearm in New Jersey, a person must first acquire a PPH or FPIC. N.J.S.A. 2C:58-3(a)(1); (b)(1). "The initial determination of whether to grant a permit or an identification card is made by the chief of police of the municipality where the applicant resides." In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 508 (2016). See N.J.S.A. 2C:58-3(d). Following an investigation, "[t]he police chief must grant a permit and identification card 'unless good cause for the denial thereof appears.'" In re F.M., 225 N.J. at 508 (quoting N.J.S.A. 2C:58-3(f)). "Thereafter, a denied applicant may request a hearing in the Law Division," ibid. (citing N.J.S.A. 2C:58-3(d); N.J.A.C. 13:54-1.12(a)), where "the police chief has the burden of proof by a preponderance of the evidence." In re Z.L., 440 N.J. Super. 351, 358 (App. Div. 2015).

In the Law Division, the police chief's decision is reviewed de novo, which "contemplates introduction of relevant and material testimony and the application of an independent judgment to the testimony by the reviewing court." Weston v. State, 60 N.J. 36, 45 (1972). However, "in evaluating the facts . . . and the reasons given for rejection of the application, the court should

give appropriate consideration to the Chief's investigative experience and to any expertise he appears to have developed in administering the statute." Id. at 46.

To be sure, a "person of good character and good repute in the community in which he lives, and who is not subject to any of the [enumerated] disabilities set forth [in the law]," may obtain these permits. N.J.S.A. 2C:58-3(c). However, "where the issuance would not be in the interest of the public health, safety or welfare," a person is not eligible to secure a PPH or FPIC. N.J.S.A. 2C:58-3(c)(5). Our Supreme Court has determined that the public health, safety, and welfare disqualifier is "intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." In re F.M., 225 N.J. at 507 (quoting In re Osworth, 365 N.J. Super 72, 79 (App. Div. 2003)).

Contrary to C.P.'s contention, "[e]ven in the absence of evidence that [an applicant] was convicted of any offenses, the New Jersey statute permits denial of his [permit] application if the underlying facts of any arrests or reported domestic disputes support . . . the public safety disqualification." In re Z.L., 440 N.J. Super. at 356. In State v. Cunningham, 186 N.J. Super. 502, 504-08 (App. Div. 1982), we determined that the grand jury no billing criminal charges related

to the defendant shooting his wife could be sufficient grounds to deny a permit application within the meaning of N.J.S.A. 2C:58-3(c)(5). Likewise, in In re Osworth, we concluded that the "dismissal of the charges following successful participation in a pretrial intervention program" did "not prevent a court from considering the underlying facts in deciding whether a person is entitled to purchase a firearm or recover one previously taken by the police." 365 N.J. Super. at 78.

Similarly, in In re J.W.D., our Supreme Court found that "the Legislature intended that courts not return guns to a defendant in a domestic violence action, even after the dismissal of the complaint, if the court finds that the defendant poses a threat to public health, safety, or welfare." 149 N.J. at 116. Indeed, "the return of weapons to a defendant who is a threat to the public--would be an invitation to a tragedy." Ibid. See also State v. Freysinger, 311 N.J. Super. 509, 514-17 (App. Div. 1998) (finding that the legislature intended that "confiscated firearms should not be returned to defendants" after the dismissal of a domestic violence complaint if they are a threat to the public health, safety or welfare). Additionally, "in deciding the defendant was disqualified under subsection (c)(5)," in In re Z.L., we considered the defendant's mental condition, even though it did not rise to the level of the disabling conditions set forth in N.J.S.A.

2C:58-3(c)(2) and (3). 440 N.J. Super. at 357 (citing Cordoma, 372 N.J. Super. at 536).

The facts of this case compel the conclusion that the order upholding denial of the permits was proper. We decline to second-guess Judge Oxley's well-founded determination that, at the time of the hearing, granting C.P.'s application would not be in the interest of the public health, safety or welfare. N.J.S.A. 2C:58-3(c)(5).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2862-19