**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2445-21

IN THE MATTER OF THE
APPEAL OF THE DENIAL
OF THE APPLICATION FOR
FIREARMS PURCHASER
IDENTIFICATION CARD AND
PERMITS TO PURCHASE A
HANDGUN N.M.

_____

Submitted October 23, 2023 – Decided November 14, 2023

Before Judges Marczyk and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. GPA-012-20.

Evan F. Nappen Attorney at Law PC, attorneys for appellant (Louis P. Nappen, on the brief).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Appellant N.M.[1] appeals from a March 7, 2022 order denying his application for a firearms purchaser identification card ("FPIC") and handgun purchase permits ("HPP"). Based on our review of the record and applicable legal principles, we affirm.

We summarize the facts developed in the record. On March 21, 2021, N.M. applied to the Freehold Borough Police Department for an FPIC and three HPPs. On May 10, 2021, after a background investigation was completed, Chief of Police Craig Dispenza denied N.M.'s application based on N.J.S.A. 2C:58-3(c)(5), finding that issuance would not be in the interest of the public health, safety, or welfare. N.M. appealed the denial.

On March 7, 2022, the trial court conducted an evidentiary hearing. Chief Dispenza testified he based his decision to deny N.M.'s application on the background investigation completed by Lieutenant Christopher Colaner. Lieutenant Colaner testified his background investigation revealed N.M. previously filed three gun permit applications in other municipalities in 2005, 2012, and 2016. Those applications were denied because issuance would not

---

[1] We use initials because the trial court relied on certain records that were expunged. R. 1:38-3(c)(7).

have been in the interest of the public health, safety, or welfare. The 2005 application was also denied for falsification of the application.

N.M. was cited for municipal ordinance violations in 1996 for interfering with a borough officer, and in 1998 for fighting, engaging in threatening behavior, and refusing to leave the area when ordered to do so by a uniformed officer. N.M. was also in possession of a dagger with a three-inch serrated blade at the time of the 1998 incident. N.M. was cited for numerous motor vehicle violations and, in 2001, was convicted of driving while intoxicated, N.J.S.A. 39:4-50. In 2011, N.M. successfully completed the pretrial intervention program after being charged with fourth-degree theft by deception, N.J.S.A. 2C:20-4.

Lieutenant Colaner obtained a copy of a reference form submitted to the Keansburg Police Department in connection with N.M.'s 2012 gun permit application. The reference indicated that N.M. had been convicted of a crime or disorderly persons offense, was an alcoholic, and had committed an act of domestic violence. Lieutenant Colaner confirmed with N.M. that the reference form was completed by a former girlfriend who is the mother of his child. In 2008, she obtained a domestic violence temporary restraining order against N.M. that was ultimately dismissed.

Lieutenant Colaner also learned that on August 3, 2019, N.M. was the subject of a domestic violence investigation in Long Branch, New Jersey. According to the police report, N.M. and his current girlfriend, S.M., were involved in an argument on the side of the road. N.M. was driving them home from a bar when S.M. became agitated because she lost her cell phone. N.M. stopped the car, and they got out. According to a witness who called the police and remained at the scene, N.M. grabbed S.M. and shoved her to the ground. S.M. reported that she tripped and fell. The officer determined S.M. was the victim of domestic violence simple assault. N.M. was not charged with any offense.

The officer detected a strong odor of alcohol from N.M. and S.M. and, as a result, did not permit either of them to drive the vehicle from the scene. The officer took the keys to the vehicle and advised N.M. and S.M. they could pick up the keys at police headquarters "no earlier than [8:00 a.m. the next] morning, after they have had time to sober up."

Lieutenant Colaner discussed the results of his investigation with Chief Dispenza. After considering the totality of the information obtained through the background investigation, Chief Dispenza denied N.M.'s application.

A-2445-21

S.M. testified for appellant. At the time of the hearing, she was in a romantic relationship with N.M. and had lived with him for four years. On August 3, 2019, she and N.M. were celebrating a friend's birthday at a restaurant. N.M. acknowledged she "had alcoholic beverages" and was "definitely intoxicated." On the drive home, she could not find her cell phone and became "upset and annoyed and frustrated" and "was getting ridiculous." She and N.M. began arguing. N.M. "exited the car to get away from [her]" to "give [her] time to calm down and compose her[self]." S.M. "got out of the car and . . . ran after him across the street" and "tripped on the sidewalk on the curb across the street." When the police arrived, she told them N.M. "didn't put his hands on [her]. That [she] had fallen." S.M. confirmed that the police did not let either of them drive from the scene, and they were forced to leave the car. She testified that N.M. never had any history of domestic violence with her, and she felt safe with him.

N.M. also testified at the hearing. He testified that he applied for the gun permits to shoot target practice, previously completed gun safety courses, and is licensed to carry firearms in Florida and New Hampshire. N.M. owns a construction company that has been in operation for twenty-seven years. He has not been cited for a motor vehicle violation since 2001. His 1996 and 1998

A-2445-21

municipal ordinance convictions were expunged in 2021, after his gun permit application in this case was denied.

With respect to the incident on August 3, 2019, N.M. confirmed that he and S.M. were driving home from a birthday celebration where they had cocktails, and S.M. grew agitated because she could not find her cell phone. They "got out of the vehicle and [he] felt it escalating so [he] walked away." He "had to go across the street where she followed [him]." He "didn't even 100 percent see how she had fallen."

After the police arrived, he and S.M. "verified that there was no domestic violence there" and they "were trying to diffuse the situation." He confirmed that there was a witness who called the police and remained at the scene, but he did not "remember 100 percent what she was saying." N.M. testified that he was not intoxicated but confirmed that the officer smelled alcohol and he was not permitted to drive from the scene.

Following the hearing, the court denied N.M.'s appeal in a thorough and well-reasoned oral opinion. The court found Chief Dispenza and Lieutenant Colaner to be "highly credible" and "inherently believable" witnesses. In assessing N.M'.s testimony, the court noted that he "had an interest in the outcome of the case" and was "a little bit defensive particularly when being

A-2445-21

questioned about [prior] motor vehicle violations as well as some of the prior incidences." The court also noted that N.M.'s testimony about the 2019 incident was inconsistent with his statement to police at the time. Specifically, at the time of the incident, N.M. told the police that S.M. tripped and fell, but he testified at the hearing that he did not know how she fell.

With respect to S.M., the court noted that she also had an interest in the case because she had been dating N.M. for six years, they lived together, and she "was clearly protective" of N.M. The court also noted that, in connection with the 2019 incident, S.M. testified somewhat inconsistently that she remembered how she fell but did not remember other details, such as who she talked to or what she said. The court also noted that at the time of the incident S.M. did not report she tripped on a curb while chasing N.M. across the street. According to the police report, S.M. reported they "were arguing on the sidewalk . . . when she tripped and fell onto the ground."

The court carefully weighed all the evidence presented including the prior gun permit denials, N.M.'s municipal ordinance violations, N.M.'s history of motor vehicle violations including the DWI conviction, the prior domestic violence TRO issued in 2008, and the 2019 incident. The court was particularly concerned with the 2019 incident because it involved an allegation of domestic

7

violence in connection with the use of alcohol, as well as the officer's concern that N.M. was too intoxicated to drive his vehicle from the scene. The court also considered N.M.'s current employment and the passage of time since his prior motor vehicle violations, municipal ordinance convictions, and criminal charges. Based on the totality of the circumstances, the court denied N.M.'s appeal. This appeal followed.

On May 5, 2022, the court provided an amplification of its opinion pursuant to Rule 2:5-1(b). In the amplification, the court noted that there was evidence in the record of a prior history of alcohol abuse that "contributed to prior incidents including a 2019 domestic violence incident." The court added that N.M. did not present any evidence of rehabilitation efforts or evidence indicating he did not have any substance abuse or mental health issues, nor did he present any community references "that would [have] provide[d] th[e] court with further insight into the [appellant] as he stood before the court."

Appellant raises the following points for our consideration: (1) the court denied appellant due process notice and an opportunity to be heard by mandating new disqualifiers in the amplification letter; (2) requiring community references constitutes an added requirement in violation of N.J.S.A. 2C:58-3(c)(5); (3) the court erred by basing its decision not on appellant's current condition but

primarily on hearsay and speculation;   and (4) N.J.S.A. 2C:58-3(c)(5) is unconstitutional pursuant to N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. ____ (2022), 142 S. Ct. 2111 (2022).

Our scope of review here is limited.  When reviewing the denial of a gun permit application, we are bound to accept the trial court's fact findings if they are supported by substantial credible evidence.  In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997).  A reviewing court shall "'not disturb the factual findings . . . of the trial [court] unless' [it is] convinced [they were] 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  In re Twp. of Bordentown, 471 N.J. Super. 196, 217 (App. Div. 2022) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  Our review of "a trial court's legal conclusions regarding firearms licenses [is] de novo."  In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015).

N.J.S.A. 2C:58-3 governs the purchase of firearms, including the issuance of FPICs and HPPs.  Pursuant to N.J.S.A. 2C:58-3(c)(5), no FPIC "shall be issued . . . [t]o any person where the issuance would not be in the interest of the

public health, safety or welfare."[2] This provision "is 'intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest.'" In re Z.L., 440 N.J. Super. 351, 356 (App. Div. 2015) (quoting In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003)).

"'A judicial declaration that [a person] poses a threat to the public health, safety or welfare involves, by necessity, a fact-sensitive analysis.'" In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 505 (2016) (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)). The State "has the burden of proving the existence of good cause for the denial by a preponderance of the evidence." Osworth, 365 N.J. Super. at 77.

Hearsay evidence may be admissible in a gun permit hearing if it is "of a credible character—of the type which responsible persons are accustomed to rely upon in the conduct of their serious affairs." Weston v. State, 60 N.J. 36,

---

[2]   While this appeal was pending, this portion of the statute was amended effective December 22, 2022.  In In re the Appeal of the Denial of M.U.'s Application for a Handgun Purchase Permit, we held that the amendments do not apply retroactively. 475 N.J. Super. 148, 195 (App. Div. 2023).  Thus, we apply the law in effect at the time of the decision being appealed.

51 (1972). "Hearsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony." Id. at 51. "However, . . . a fact finding or legal determination cannot be based on hearsay alone." Ibid. "[T]here must be a residuum of legal and competent evidence in the record to support" the court's decision. Ibid.

"The court also may consider the underlying facts relating to any criminal charges brought against the applicant, regardless of whether the charges were dismissed . . . and even if the dismissal followed successful participation in a pretrial intervention program." In re the Appeal of the Denial of M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 173 (App. Div. 2023) (citations omitted). The court may also consider expunged records. Id. at 174.

We have found unfitness under subsection (c)(5) in a variety of circumstances. For instance, the exclusion has been applied to those who have disregarded New Jersey's gun laws. See Osworth, 365 N.J. Super. at 80-81; State v. Cunningham, 186 N.J. Super. 502, 510-13 (App. Div. 1982). However, misusing a weapon is not required for a denial under subsection (c)(5). F.M., 225 N.J. at 514. We have also applied the statute to someone convicted of disorderly persons offenses. See In re Sbitani, 216 N.J. Super. 75, 76-78 (App.

Div. 1987) (affirming denial of an FPIC because of the individual's conviction for possession of less than twenty-five grams of marijuana).

In State v. Freysinger, we applied the exclusion to someone who had been convicted of driving under the influence, refused to undergo chemical tests, and struck his girlfriend with his car before leaving her "unattended in the roadway." 311 N.J. Super. 509, 516-17 (App. Div. 1998).  Individuals who have a history of domestic violence—whether documented or admitted—also have been found unfit to purchase a firearm under subsection (c)(5), even though they had no convictions for domestic violence.  F.M., 225 N.J. at 510-16;  Z.L., 440 N.J. Super. at 356-59.

We affirm substantially for the reasons set forth in the court's oral opinion. We add the following comments.

Appellant contends the court improperly mandated new disqualifiers in its amplification letter and required community references in violation of N.J.S.A. 2C:58-3(f)[3].  We are not persuaded.

---

[3]  N.J.S.A. 2C:58-3(f) provides, "There shall be no conditions or requirements added to the form or content of the application, or required by the licensing authority for the issuance of a permit or identification card, other than those that are specifically set forth in this chapter."

The court did not impose any additional conditions or requirements that appellant was required to satisfy in the amplification letter. Rather, the court noted that appellant did not provide any evidence in the form of rehabilitation records, expert opinion, or community references to dispel the court's concerns over his history of alcohol use and domestic violence allegations. The court did not require the submission of additional evidence or community references as a condition of obtaining an FPIC or HPP.

Appellant also argues that the court based its decision primarily on hearsay and speculation instead of his condition at the time of the application. We are not convinced. The court based its decision on all of the evidence presented, including N.M.'s testimony regarding his condition at the time of the application. The court necessarily considered all of the historical evidence, including evidence of appellant's prior offenses, domestic violence allegations, and gun permit applications, in evaluating appellant's condition at the time of the application. The court weighed all of the evidence based on its assessments of the credibility of the witnesses at the hearing, the temporal proximity and seriousness of the prior offenses and allegations, and the character of the hearsay evidence presented. The court did not rely on hearsay alone.

 A-2445-21

To the extent the court relied on the records relating to appellant's prior gun permit applications and the police report relating to the 2019 incident, the allegations were substantially corroborated by witness testimony. For example, Lieutenant Colaner testified appellant told him the reference form submitted in connection with his 2012 gun permit application was completed by his former girlfriend who previously obtained a domestic violence temporary restraining order against him. Likewise, the testimony of appellant and S.M. confirmed the 2019 incident involved an allegation of domestic violence based on an eye-witness report and also involved the consumption of alcohol in connection with that incident as well as the operation of a motor vehicle.

The court considered the totality of the evidence based on the court's assessment of the testimony of the witnesses at the hearing and the other evidence presented. The court's findings were amply supported by substantial credible evidence, and there is no basis to disturb them on appeal.

N.M. next argues that the public health, safety, or welfare standard set forth in N.J.S.A. 2C:58-3(c)(5) is unconstitutional based on the United States Supreme Court's decision in <u>Bruen</u>, 597 U.S. ____ (2022), 142 S. Ct. 2111 (2022). We recently addressed and rejected substantially the same argument. <u>In re M.U.</u>, 475 N.J. Super. at 190-95. We see no reason to deviate from that

14

well-reasoned analysis and conclude N.J.S.A. 2C:58-3(c)(5) is constitutional for the same reasons.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2445-21