# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1024-22

IN THE MATTER OF
P.F.C.[1]

_____

Submitted March 12, 2024 – Decided May 21, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. 0206 XTR 2022 000001.

Evan F. Nappen, Attorney at Law, PC, attorneys for appellant P.F.C. (Ali Homayouni, of counsel and on the briefs).

Mark Musella, Bergen County Prosecutor, attorney for respondent State of New Jersey (K. Charles Deutsch, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

---

[1] Initials are used because "[a]ll records related to proceedings for extreme risk protective orders are confidential and may not be disclosed to anyone other than the respondent . . . , except if good cause is found by the court to release such records."  Admin. Off. of the Cts., Admin. Directive #19-19, Guidelines for Extreme Risk Protective Orders (Aug. 12, 2019).

P.F.C. appeals from the October 21, 2022, Law Division order granting the State's motion to revoke his firearms purchaser identification cards (FPICs) and handgun purchase permits (HPPs), and ordering him to forfeit his firearms under the firearms disqualification statute, N.J.S.A. 2C:58-3. N.J.S.A. 2C:58-3 governs applications for FPICs and HPPs and

> "recognizes that the right to possess firearms is presumed, except for certain good cause." In re Z.L., 440 N.J. Super. 351, 355 (App. Div. 2015) (citing N.J.S.A. 2C:58-3(c)). The statute lists a series of disqualifying circumstances including . . . one that specifically provides that no FPIC or [HPP] shall be issued "to any person who knowingly falsifies any information on the application form for a handgun purchase permit or firearms purchaser identification card." N.J.S.A. 2C:58-3(c)(3). The other statutory provision at issue in this case read at the time of petitioner's application that "[n]o [HPP or FPIC] shall be issued . . . to any person where the issuance would not be in the interest of the public health, safety or welfare." N.J.S.A. 2C:58-3(c)(5) (Dec. 2022).[2]
>
> [In re Appeal of the Denial of R.W.T., 477 N.J. Super. 443, 460-61 (App. Div. 2023) (second alteration and second omission in original) (footnote omitted).]

---

[2] After the hearing, N.J.S.A. 2C:58-3(c)(5) was amended. L. 2022, c. 131, § 2 (effective Dec. 22, 2022). However, "the amendments to N.J.S.A. 2C:58-3 apply prospectively" and do not impact this case. In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 196 (App. Div. 2023).

A-1024-22

The October 21, 2022, order also denied the State's petition for a final extreme risk protective order (FERPO) under N.J.S.A. 2C:58-24, a ruling P.F.C. does not challenge on appeal. Because the trial judge's findings regarding P.F.C.'s disqualifications under N.J.S.A. 2C:58-3(c)(3) and (5) were amply supported by substantial credible evidence in the record, we affirm the revocation of P.F.C.'s FPICs and HPPs as contemplated by N.J.S.A. 2C:58-3(f). Because our holding in M.U., 475 N.J. Super. 148, interpreting the limits of N.J.S.A. 2C:58-3(f), is controlling and dispositive, forfeiture of P.F.C.'s previously acquired firearms should not have been ordered. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

We glean these facts from the record. Between 2016 and 2018, P.F.C. filed four FPIC and HPP applications with his local police department. The applications were dated November 2, 2016; February 22, 2017; January 10, 2018;[3] and February 20, 2018. Each application asked the following questions:

> (19) Have you ever been convicted of a disorderly persons offense in New Jersey or any criminal offense in another jurisdiction where you could have been sentenced up to six months in jail that has not been expunged or sealed? If yes, list date(s), place(s) and offense(s).

---

[3] The January 10, 2018, application was for "a lost or stolen" FPIC.

A-1024-22

(20) Have you ever been convicted of a crime in New Jersey or a criminal offense in another jurisdiction where you could have been sentenced to more than six months in jail that has not been expunged or sealed? If yes, list date(s), place(s) and crime(s).

In the first application, P.F.C. responded in the negative for both questions. In the remaining three applications, P.F.C. responded in the negative to question 19 and affirmatively to question 20, supplementing his response to question 20 with "1978," "Elizabeth N.J.," "Theft," "PTI," "Dismissed." All four applications were investigated by the same investigating officer and approved.

On August 9, 2022, P.F.C. applied for a handgun carry permit through his local police department using the form prescribed by the Superintendent of State Police. The handgun carry permit application asked similar questions as the FPIC/HPP applications, including whether the applicant had "ever been convicted of a disorderly persons offense, that has not been expunged or sealed" (question 17) and whether the applicant had "ever been convicted of a criminal offense, that has not been expunged or sealed" (question 18). P.F.C. answered

A-1024-22

questions 17 and 18 in the negative but supplemented his response to question 18 by denoting "5-10-1994 SINY[4] BLACKJACK MISD[E]MEANOR."

Following an investigation, Cliffside Park Police Sergeant William Crapara[5] submitted a report to the deputy chief dated August 22, 2022, stating that while "conducting a background check of [P.F.C.] . . . for a [c]oncealed [c]arry [h]andgun [p]ermit," he discovered that

> [P.F.C.] was arrested on March 7, 1994[,] by the New York City Police Department Precinct 123 for Criminal Possession of a Loaded Firearm (3rd degree Felony). On September 22, 1994, [P.F.C.] pled guilty to Criminal Possession of a Weapon (4th degree, Class A Misdemeanor). Due to the fact that all weapon related crimes in the State of New Jersey being indictable offenses, I believe that [P.F.C.] was initially issued a [FPIC] in error and is ineligible to own or possess firearms or ammunition.

As a result, Crapara obtained a temporary extreme risk protective order (TERPO) pursuant to N.J.S.A. 2C:58-23, permitting law enforcement officers "to seek emergent orders to remove firearms from a person who poses a danger to self or others . . . ." Matter of D.L.B., 468 N.J. Super. 397, 400 (App. Div.

---

[4] Staten Island, New York.

[5] A different officer had investigated P.F.C.'s prior FPIC/HPP applications.

A-1024-22

2021). The TERPO resulted in the seizure of numerous firearms, miscellaneous ammunition, and an FPIC from P.F.C.

At the ensuing plenary hearing for the court to decide whether a FERPO would be issued to remove the firearms indefinitely, see N.J.S.A. 2C:58-24, the State offered Crapara as its sole witness. Consistent with his August 22, 2022, report, Crapara testified that when he received P.F.C.'s handgun carry permit application, he conducted an investigation into P.F.C.'s background and discovered P.F.C.'s 1984 New York gun conviction. After reviewing P.F.C.'s four prior FPIC/HPPs applications where the 1984 New York gun conviction was not disclosed, Crapara "believed that [P.F.C.] should have never been issued" the permits. He believed "[i]t must have been an oversight on the [part of the prior] officer . . . conducting the investigations." When asked during cross-examination how he interpreted P.F.C.'s response to question 18 on the handgun carry permit application, Crapara responded "[i]t appears that he's admitting that he had an out[-]of[-s]tate conviction but answered the question no and listed . . . a blackjack as the weapon when, in fact, it was a firearm."

P.F.C. did not testify but instead relied on a certification he submitted to the court. In the certification, among other things, P.F.C. averred that he "was not aware, at the time of [his] initial application for a [FPIC] in 2016 that [his]

1994 prior conviction in New York was a crime for which [he] would be statutorily barred from receiving a[n FPIC]" or that he "could receive a sentence of up to a year in prison in New York" for the crime. He further certified that he "confused . . . the maximum criminal exposure under the terms of the plea agreement" with the "maximum exposure under the applicable law for the crime . . . [he] pled guilty to," and "believed that the misdemeanor in New York would not transfer as an indictable crime in New Jersey." P.F.C. also explained that although he was not required to disclose "the information about the [1978] dismissed [Union County] theft charge" because it did not result in a conviction, he "volunteered the information . . . because [he] believed . . . that volunteering negative information would be beneficial to [his] applications, even though not necessary."

During the hearing, P.F.C. argued the case did not meet the criteria for entry of a FERPO but instead reflected "an inadvertent mistake" in connection with the completion of a permit application by a layperson. P.F.C. contended the matter should be dismissed "in the interest of justice" because it was "an isolated incident" and there was "no pattern of troubling behavior or violation of law." P.F.C. further asserted the State was estopped from relying on the New York conviction as a basis for the FERPO petition because the State could have

7

"looked at his record" in reviewing the earlier applications. Additionally, P.F.C. advanced constitutional challenges, contending it was "an excessive fine" in violation of the Eighth Amendment for P.F.C. to "forfeit[] all his firearms and his permit potentially indefinitely just based on . . . one mistake that he made on the permit application." Further, according to P.F.C., the Second Amendment warranted "historical scrutin[y]" for "the FERPO [s]tatute" to be applied to a "case of this nature."

The State countered that based on P.F.C.'s falsification in his earlier FPIC and HPP applications, he should be disqualified from possessing firearms under N.J.S.A. 2C:58-3(c), a FERPO should be granted under N.J.S.A. 2C:58-24, P.F.C.'s FPICs should be revoked under N.J.S.A. 2C:58-3(f), and sale of his firearms should be compelled. In support, the State argued that P.F.C. was disqualified from obtaining a FPIC because his New York conviction was a "[p]rior conviction in another jurisdiction" under N.J.S.A. 2C:44-4(c). Under the version of N.J.S.A. 2C:44-4(c) in effect when P.F.C. filed his earlier FPIC/HPP applications, "[a] conviction in another jurisdiction shall constitute a prior conviction of a crime if a sentence of imprisonment in excess of [six] months was authorized under the law of the other jurisdiction." According to the State, because the New York charge subjected him to sentencing exposure

under New York law for a fourth-degree conviction of up to "one year in jail," it constituted a prior conviction under the statute notwithstanding the fact that his actual sentence based on his guilty plea was thirty days' imprisonment.[6] The State further argued that because P.F.C. no longer satisfied the requirements to receive an FPIC, he should be disqualified from possessing firearms and the seized firearms should not be returned.

Following the hearing, the judge issued an order and oral opinion on October 21, 2022, denying the FERPO, revoking P.F.C.'s FPICs and HPPs, and ordering P.F.C. to sell his firearms within 120 days through a licensed firearms dealer.[7]  In her oral opinion, the judge credited Crapara's testimony and recounted the facts, which were largely undisputed.  The judge pointed out that P.F.C. had referred to the 1978 dismissed New Jersey theft charge but never disclosed the 1994 New York gun conviction in any of the four FPIC/HPP applications.  According to the judge, P.F.C. disclosed the 1994 New York gun

---

[6]  In a supplemental brief, the State informed the judge that N.J.S.A. 2C:44-4(c) was amended in 2021, to change the definition of a "conviction in another jurisdiction" to one with sentencing exposure exceeding one year.  However, because the four FPIC/HPP applications predated the 2021 amendment, the State asserted the disqualification still applied to those applications.

[7]  The judge noted that a stay of the sale of the firearms would be in effect once an appeal was filed.

conviction for the first time when he submitted the handgun carry permit application but listed the weapon as a blackjack instead of a firearm.

The judge noted that P.F.C.'s applications presented "highly troubling" answers, and "the fact that he [did not] testify . . . allow[ed the judge] to make a negative inference." On that basis, the judge concluded that N.J.S.A. 2C:58-3(c)(3) (knowing falsification disqualifier) and N.J.S.A. 2C:58-3(c)(5) (public health, safety, or welfare disqualifier) applied to disqualify P.F.C. from possessing firearms. The judge explained:

> I do find that the State has shown this [c]ourt by a preponderance of the evidence that [P.F.C.] has not been forthright on the applications and that . . . based upon these applications and the underlying behavior with regard to the applications[,] . . . it would not be in the interest of the public health, safety, and welfare for [P.F.C.] to continue to have his ID card or his permits.

Turning to the FERPO petition, the judge concluded she "[did] not believe that this [was] a case that the TERPO/FERPO statutory provisions were designed to address." The judge explained that rather than presenting as "someone who [was] threatening to kill himself" or "someone else," or "someone who has mental health issues" or a "domestic violence background," P.F.C. had no "indication of any violence in his background or anything that would lead [the judge] to believe that he would harm anybody by virtue of handling

10

firearms."  Instead, P.F.C.'s "lack of candor" was the basis for revoking the FPIC

and HPP and "that lack of candor [was] what causes a concern with regard to

the interest in public health, safety, and welfare."  The judge submitted a written

amplification of reasons on December 14, 2022, pursuant to Rule 2:5-1(d).  This

appeal followed.

On appeal, P.F.C. raises the following points for our consideration:

> [POINT I]
>
> A REVOCATION OF A FIREARMS PERMIT DOES
> NOT BY ITSELF JUSTIFY A FORFEITURE OF
> FIREARMS LEGALLY PURCHASED BEFORE THE
> REVOCATION OCCURS BASED ON NEW
> FEDERAL AND STATE PRECEDENT.
>
> [POINT II]
>
> THE TRIAL COURT IGNORED AND CHERRY-
> PICKED EVIDENCE IN MAKING ITS
> DETERMINATION THAT [P.F.C.] KNOWINGLY
> FALSIFIED PRIOR FIREARM PERMIT
> APPLICATIONS.
>
> [POINT III]
>
> THE TRIAL COURT IMPERMISSIBLY MADE AN
> ADVERSE INFERENCE THAT [P.F.C.]
> KNOWINGLY FALSIFIED PRIOR FIREARM
> PERMIT APPLICATIONS WHEN IT ITSELF
> UNDERSTOOD WHY [P.F.C.]'S LACK OF
> TESTIMONY WAS BASED ON HIS PRIVILEGE
> AGAINST SELF-INCRIMINATION.

11

[POINT IV]

CLIFFSIDE PARK POLICE DEPARTMENT SHOULD BE ESTOPPED FROM CLAIMING THAT [P.F.C.] FALSIFIED PRIOR FIREARM PERMIT APPLICATIONS WHEN IT HAD CONSTRUCTIVE NOTICE OF [P.F.C.]'S PRIOR CRIMINAL RECORD IN NEW YORK AND YET APPROVED HIS PRIOR APPLICATIONS FOUR TIMES IN A ROW.

[POINT V]

THE TRIAL COURT PROVIDED NO EXPLANATION AS TO WHY [P.F.C.] POSSESSING A FIREARMS PERMIT WAS NOT IN THE INTEREST OF PUBLIC HEALTH, WELFARE, OR SAFETY.

[POINT VI]

THE TOTAL FORFEITURE OF [P.F.C.]'S FIREARMS BASED ON MISTAKES IN HIS PRIOR PERMIT APPLICATIONS IS A VIOLATION OF THE EXCESSIVE FINES CLAUSE OF THE UNITED STATES CONSTITUTION.

We begin with our standard of review.

> An appellate court's review of "a trial court's legal conclusions regarding firearms licenses [is] de novo." In re N.J. Firearms Purchaser Identification Card by Z.K., 440 N.J. Super. 394, 397 (App. Div. 2015). However, we must accept the trial court's fact findings if they are supported by substantial credible evidence. In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997).
>
> [R.W.T., 477 N.J. Super. at 462 (alteration in original).]

12

"When evidence is testimonial and involves credibility questions, deference is 'especially appropriate' because the trial judge is the one who has observed the witnesses first-hand." D.L.B., 468 N.J. Super. at 416 (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). As such, we "will not disturb a trial court's findings unless they 'went so wide of the mark that the judge was clearly mistaken,'" ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007)), or "unless those findings would work an injustice," J.W.D., 149 N.J. at 117.

Applying these principles, we are satisfied that the judge's findings that P.F.C. was disqualified to possess firearms under N.J.S.A. 2C:58-3(c)(3) (knowing falsification disqualifier) and N.J.S.A. 2C:58-3(c)(5) (public health, safety, or welfare disqualifier) are amply supported by substantial credible evidence in the record and there is no basis to disturb those findings on appeal. The judge considered the totality of the evidence based on her assessment of the witness's testimony at the hearing as well as the other evidence presented. As the judge stated in her amplified reasoning, knowing that "he was required to disclose" his 1994 New York gun conviction, P.F.C. "failed to disclose th[e] conviction on four separate applications between 2016 and 2018" when "N.J.S.A. 2C:44-4 classified his conviction as a prior conviction under New

Jersey state law." Thus, P.F.C.'s failure to disclose "was not isolated and aberrational[.]" Z.L., 440 N.J. Super. at 358.

The judge further explained:

> This lack of candor was determined to have been done knowingly in part because of [P.F.C.'s] choice not to testify at the hearing on October 21, 2022. Despite the [c]ourt indicating that it would make a negative inference from that decision, [P.F.C.] chose not to testify or open himself up to cross-examination. Furthermore, the [c]ourt noted that [P.F.C.] chose to disclose his dismissed New Jersey theft arrest from Elizabeth in 1978. It defied logic that [P.F.C.] would disclose an older, dismissed charge while not disclosing a conviction for a gun related crime. Finally, although the amendment to N.J.S.A. 2C:44-4 had gone into effect at the time of his 2022 application, the [c]ourt recognized that [P.F.C.] was dishonest on his application when he characterized his 1994 New York conviction as being for possession of a "blackjack." A blackjack is a small weapon used for bludgeoning, not a firearm. Therefore, the [c]ourt found ample evidence on the record to support that [P.F.C.] knowingly falsified his application for gun permits and purchaser ID cards.
>
> The [c]ourt found that [P.F.C.'s] lack of candor and knowing falsification on his applications made [P.F.C.'s] ownership of firearms against the interest of public safety and welfare.

We agree with the judge that the State established by a preponderance of the evidence that P.F.C. met the disqualification criteria under N.J.S.A. 2C:58-3(c)(3) and (5) to warrant revocation of his permits. See In re Forfeiture of Pers.

14

Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 508 (2016) (explaining that the State must prove "by a preponderance of the evidence, that forfeiture is legally warranted." (quoting State v. Cordoma, 372 N.J. Super. 524, 533 (App. Div. 2004) (emphasis omitted))). "[O]ur courts have repeatedly upheld disqualification under subsection (c)(5), separately, or in conjunction with, other statutory disabilities." Z.L., 440 N.J. Super. at 356-57. Although P.F.C. argues he was confused whether the New York conviction constituted a disqualifying conviction under the statute, his ignorance is no excuse. "In the context of gun-control laws[,] courts have held that ignorance of the law is no defense to even a statute requiring that the defendant have 'knowingly' violated the law." In re Two Seized Firearms, 127 N.J. 84, 88 (1992) (quoting United States v. Sherbondy, 865 F.2d 996, 1002 (9th Cir. 1988)).

Further, the judge's finding that P.F.C. knowingly falsified information in his four prior FPIC/HPP applications is supported by permissible inferences drawn from the facts,[8] and "it does not serve public safety to issue a handgun purchase permit to someone who has demonstrated his willingness to disregard

---

[8] See Model Jury Charges (Criminal), "State of Mind" (approved Jan. 11, 1993) ("A state of mind is rarely susceptible of direct proof, but must ordinarily be inferred from the facts. . . .  It is within [the factfinder's] power to find that such proof has been furnished . . . by inference . . . .").

the gun laws of this State." In re Osworth, 365 N.J. Super. 72, 81 (App. Div. 2003). Indeed, N.J.S.A. 2C:58-3(c)(5) has "been applied to individuals convicted of certain disorderly persons offenses." M.U., 475 N.J. Super. at 179 (citing In re Sbitani, 216 N.J. Super. 75, 76-78 (App. Div. 1987)).

P.F.C. argues the judge should not have drawn a negative inference from his refusal to testify given his Fifth Amendment right to remain silent. In certain circumstances, "[w]hen a party in a civil matter asserts the privilege against self-incrimination, the fact-finder may draw an adverse inference of guilt." N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 266 (App. Div. 2018). Under the circumstances in this case, particularly the fact that in order to rebut the State's proofs and demonstrate that his falsification was not done knowingly, P.F.C. relied on his certification that was testimonial in nature but not subject to cross-examination, the judge's negative inference was proper.

Equally unavailing is P.F.C.'s argument that the Cliffside Park Police Department should be estopped from claiming he falsified his FPIC/HPP applications because the department previously approved the applications. To establish the entrapment by estoppel defense, a defendant must demonstrate, by a preponderance of the evidence, that:

> (1) a government official (2) told the defendant that
> certain criminal conduct was legal, (3) the defendant

16

> actually relied on the government official's statements, (4) and the defendant's reliance was in good faith and reasonable in light of the identity of the government official, the point of law represented, and the substance of the official's statement.
>
> [United States v. Stewart, 185 F.3d 112, 124 (3d Cir. 1999) (quoting United States v. W. Indies Transp., Inc., 127 F.3d 299, 313 (3d Cir. 1997)).]

Here, nothing in the record supports P.F.C.'s invocation of the defense.

Turning to the revocation, the granting, renewal, and revocation of an FPIC or HPP is governed by N.J.S.A. 2C:58-3(f). Pursuant to N.J.S.A. 2C:58-3(f), an FPIC "shall be void if the holder becomes subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]." Furthermore, "[a]ny firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of the permit." N.J.S.A. 2C:58-3(f). A county prosecutor, a chief of police, or any citizen "may apply to the court at any time for the revocation of the card." Ibid. (emphasis added). "The State must prove, 'by a preponderance of the evidence, that forfeiture is legally warranted.'" M.U., 475 N.J. Super. at 197 (quoting F.M., 225 N.J. at 508). The same rules apply to an HPP. Ibid. Thus, revocation of the permits was clearly permissible and, indeed, warranted.

However, in M.U., we held that "N.J.S.A. 2C:58-3(f) . . . provide[d] no basis for the forfeiture of firearms already possessed." Id. at 199. There, we reviewed the denial of an HPP application by the Oakland Police Department after the chief of police determined that issuing the permit to the applicant "would be contrary to public health, safety, or welfare." Id. at 163-64. M.U. applied for the HPP after receiving an FPIC approximately two years prior. Id. at 163. After conducting an investigation, the department's investigating officer discovered that M.U.'s background contained "'multiple instances of negative police interactions, including theft of a trailer and criminal mischief.'" Id. at 164. The investigating officer "considered each incident and concluded they reflected a pattern of 'poor judgment,'" which rendered M.U. "'unfit to possess a firearm.'" Id. at 165. The chief of police agreed and sent M.U. a denial letter. Ibid.

M.U. "appealed the denial to the Law Division." Id. at 164. Following a testimonial hearing, the trial court entered an order denying M.U.'s HPP application and granting the State's motion to revoke his FPIC and compel the sale of his firearms within 120 days. Id. at 167. On appeal, we affirmed the denial of the HPP application and the revocation of the FPIC, notwithstanding the fact that the FPIC had been issued two years earlier. Id. at 196-98. We

18

concluded M.U. "was not deprived of procedural due process," having "received both adequate notice and a full opportunity to be heard." Id. at 198.

We reached a different conclusion regarding the forfeiture of M.U.'s firearms. In considering the forfeiture and compelled sale of M.U.'s firearms, we analyzed provisions of the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, provisions of New Jersey's forfeiture statute for firearms unlawfully possessed, acquired, or used in furtherance of unlawful activity, N.J.S.A. 2C:64-1(a)(1) to (2), the FERPO and TERPO statutes, N.J.S.A. 2C:58-24 and -26, as well as N.J.S.A. 2C:58-3(f). 475 N.J. Super. at 199-203. We concluded that because there was no allegation or evidence in the record supporting the proposition that the applicant "used his handgun in furtherance of an unlawful activity, committed an act of domestic violence, or was subject to weapon surrender under an extreme risk protective order," forfeiture was not statutorily mandated. Id. at 201.

As to N.J.S.A. 2C:58-3(f), we determined that under its plain terms, it also "provide[d] no basis for the forfeiture of firearms previously possessed." Id. at 199; see id. at 202 ("[D]efendant is not prohibited by N.J.S.A. 2C:39-5 from possessing and carrying a firearm within his residence, and perhaps on adjacent land he owns or possesses, without a HPP, FPIC, or carry permit."). As a result,

19

"[w]e reverse[d] the forfeiture and compelled sale of [M.U.'s] firearms and remand[ed] for entry of a corrected order." Id. at 203.

We reach the same result here. We affirm the revocation of P.F.C.'s FPICs and HPPs pursuant to N.J.S.A. 2C:58-3(f). However, as the State concedes, the judge improperly ordered the forfeiture of P.F.C.'s firearms under N.J.S.A. 2C:58-3(f) because the statute does not explicitly permit forfeiture of firearms acquired prior to the revocation. Because forfeiture under N.J.S.A. 2C:58-3(f) is clearly impermissible, as in M.U., we reverse the judge's order compelling the forfeiture and sale of P.F.C.'s firearms and remand for the entry of a corrected order.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

20

A-1024-22